[No. 56-40400-1, 354-1. Division One—Panel 2. July 13, 1970.]

JAMES F. CARLSON *et al., Appellants,* v. ELLIS B. STAIR *et al., Respondents.*

28

*Fred Schlick,* for appellants.

*Johnson, Quigley, Hatch & Loveridge* and *Robert B. Leslie,* for respondents.

WILLIAMS, J.—Plaintiffs James F. Carlson and Jean M. Carlson, his wife, appeal from a judgment and decree of the trial court quieting a disputed land title in defendants Ellis B. Stair and Gloria L. Stair, his wife, and dismissing a claim against defendant Security Title Insurance Company on a policy of title insurance issued in relation thereto.

Title to the land in controversy was originally patented as government lot 2, described as containing 18.6 acres. It was triangular in shape with one dimension bordering on Puget Sound, and in reality contained only 10.493 acres. In 1906, the owners, Edward Glanfield and wife, conveyed the north 9.3 acres of the lot to Eugene Childe by warranty deed. On the same day, Childe quitclaimed the south 9.3 acres of the lot to Glanfield. Both deeds were executed before the same notary public.

In 1961, a person whose title originated in Childe, divided the north 9.3 acres into two equal parts and sold them on installment real estate contracts to appellants and respondents respectively, respondents taking the northerly half and appellants the southerly. At the time of the purchase, the parties recognized that the remaining portion of government lot 2 consisted of a 60-foot strip along the south boundary. It was their then intention to purchase this property to obtain access to a road to the south.

In 1965, appellants arranged for the purchase of the 60-foot strip, described as the south 9.3 acres of government lot 2, from a person who had acquired it in 1930 at a tax foreclosure sale. Respondents were unable or did not wish to join in the purchase, so appellants paid cash for the

property, taking title by quitclaim deed to the south 9.3 acres of government lot 2.

Appellants assign error to the finding of the trial court that the north 9.3 acres was paramount, in refusing to find that the tax deed created a paramount title to the south 9.3 acres of the parcel and in determining that appellants are estopped from claiming any more than the 60-foot strip.

The first assignment of error raises the question of the effect of the execution and delivery of the warranty deed and quitclaim deed on the same day in 1906. Several inferences can be drawn from the cross-delivery of deeds. Appellants take the view that the legal effect was either to divide the property equally so as to give Childe the north one-half and Glanfield the south one-half, or to place and replace title to the south 9.3 acres in Glanfield, leaving Childe with the north 1.193 acres.

The trial court found that the warranty deed conveyed title to the north 9.3 acres to Childe and that the quitclaim deed was for the purpose of disclaiming any right Childe might have in what was thought to be the south 9.3 acres. This is a reasonable inference to be drawn from the evidence and will not be disturbed on appeal. *Lamm v. McTighe,* 72 Wn.2d 587, 434 P.2d 565 (1967). It is true, as appellants contend, that a quitclaim deed can convey as much interest in real property as a warranty deed. *McCoy v. Lowrie,* 44 Wn.2d 483, 268 P.2d 1003 (1954). But whereas the former has its lineage as a form of release, 23 Am. Jur. 2d *Deeds* § 16 (1965), the latter is a deed of conveyance characterized as a "solemn document not to be lightly viewed." 6 G. Thompson, Real Property § 2935 (1962). The rule is that the grantor may not attack or defeat his own deed. *Standring v. Mooney,* 14 Wn.2d 220, 127 P.2d 401 (1942). It is a logical interpretation of the transaction evinced by the two instruments that the grantor of the north 9.3 acres who conveyed by warranty deed did not intend to defeat the estate created in the grantee by accepting a release to the south 9.3 acres. The north 9.3 acres is therefore paramount.

■ The contention of appellants that the tax title created an estate consisting of the south 9.3 acres is also without merit. The assessment was obviously based upon the plat showing 18.6 acres in government lot 2. At a tax foreclosure sale, the successful bidder acquires title in fee as against the owner, but the taxing body does not warrant title to the land sold and is not responsible for defects therein. *Shelton v. Klickitat County*, 152 Wash. 193, 277 P. 839 (1929); *Phelps v. Tacoma*, 15 Wash. 367, 46 P. 400 (1896). A tax deed extends only to the real property over which the court in the foreclosure proceeding has obtained jurisdiction. *Wingard v. Heinkel*, 70 Wn.2d 730, 424 P.2d 1010 (1967); *Berry v. Pond*, 33 Wn.2d 560, 206 P.2d 506 (1949). Only the 60-foot strip heretofore mentioned could come under the jurisdiction of the court in the tax foreclosure action, because the balance of the south 9.3 acres was nonexistent and had been since 1906 when Glanfield made his conveyance of the north 9.3 acres of government lot 2. The tax deed to the south 9.3 acres thus did not create an estate in any part of the north 9.3 acres.

Because we have concluded that the trial court properly found the north 9.3 acres of government lot 2 to have been paramount and the title thereto not altered by the tax sale, we do not reach the question of estoppel.

■ After judgment, appellants discovered evidence that Glanfield had occupied a house somewhere in the southern portion of the north 9.3-acre tract, and moved for a new trial to establish their ownership thereof by adverse possession. The trial court denied the motion on the ground that the new evidence would not change the result. *Hill v. L. W. Weidert Farms, Inc.*, 75 Wn.2d 871, 454 P.2d 220 (1969). We agree. The affidavits in support of the motion, at best, show only that there was a house located in that area in which Glanfield and his tenants resided for some years. There is nothing suggested which would overcome the rule that a grantor remaining in possession after conveyance will be presumed to hold in subservience to the grantee. *Stockwell v. Gibbons*, 58 Wn.2d 391, 363 P.2d 111

(1961); *Spaulding v. Collins,* 51 Wash. 488, 99 P. 306 (1909). A new trial would be futile.

Affirmed.

HOROWITZ, A. C. J., and UTTER, J., concur.