# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39108

| | | |
|---|---|---|
| IDA-THERM, LLC, | ) | |
| | ) | |
| Plaintiff-Counterdefendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GARY RAY MANN and KALEE MANN, husband and wife; MATT DELBERT MANN; ALAN KOLBET and MATILDA KOLBET, husband and wife, | ) | |
| | ) | |
| Plaintiffs-Counterdefendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BEDROCK GEOTHERMAL, LLC, | ) | |
| | ) | Idaho Falls, November 2012 |
| Defendant-Counterclaimant-Respondent, | ) | Term |
| | ) | |
| and | ) | 2012 Opinion No. 147 |
| | ) | |
| CPC MINERAL, LLC; PRESTON R. BELL; | ) | Filed: December 20, 2012 |
| DORIS BELL ELLIOTT; JANALYNN FRIEND; MANX D. QUAYLE; | ) | |
| DAWNALYN HEWLETT; CALVIN W. YATES; JON N. YATES; BRUCE F. QUAYLE; SHARON BAEAS AHMED; RALPH LAWAYNE BATES; PHIL BATES; ALFRED BURDETTE BATES; RITA J. HARSHMAN; NANCY FAYE JASZKOWIAK; PATRICIA J. WEBB; KREIG BELL; MONTY BELL; JOHN BELL SYRE; and all unknown owners and/or other persons or entities claiming any interest in geothermal resources in the following described real property:  SEE FILE FOR COMPLETE DESCRIPTION, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| _____ | ) | |

1

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County.  Hon. Dane H. Watkins, Jr., District Judge.

The judgment of the district court is <u>reversed</u>.

Parsons, Smith, Stone, Loveland & Shirley, LLP, Burley, for appellant. Lance A. Loveland argued.

Marcus, Christian, Hardee & Davies, LLC, Boise, for respondent. Michael R. Christian argued.

_____

J. JONES, Justice.

Ida-Therm, LLC, appeals a summary judgment in favor of Bedrock Geothermal, LLC, holding that a reservation of "all the oil, gas, and minerals, in, on, or under the surface of [deeded] lands," in a 1946 warranty deed included the geothermal resources underlying the property. We reverse.

# I.
## FACTUAL AND PROCEDURAL HISTORY

On March 19, 1946, Arthur J. Bell and his wife, Vinnie O. Bell, conveyed land in Bonneville County, Idaho (the Bell Property) via warranty deed (the Bell Deed) to C.C. Mann. The Bell Deed reserved to Arthur and Vinnie "all the oil, gas, and minerals, in, on, or under the surface" of the Bell Property. The individual Defendants in this suit are the successors of Arthur and Vinnie and the owners of the reserved oil, gas, and mineral rights. They allege that the reservation includes the rights to geothermal resources and, based on this contention, they have leased rights to the geothermal resources to Bedrock.

Plaintiffs Garry and Kalee Mann, Alan and Matilda Kolbet, and Matt Mann are C.C. Mann's successors and the owners of the Bell Property. They allege that the Bell Deed reservation does not include geothermal resources. Based on this, they believe that as part of their estate they own the geothermal rights, which they have leased to Ida-Therm.

On August 4, 2010, the Plaintiffs brought this action in an attempt to clarify the scope of the oil, gas, and mineral reservation, and settle the ownership of the geothermal resources. Bedrock filed an answer and counterclaim on September 9, 2010, alleging that the Bell Deed reservation does include geothermal resources. It thus sought a declaratory judgment that Ida-Therm's lease was void and quieting title in favor of Bedrock.

2

On February 17, 2011, Bedrock moved for summary judgment and "ask[ed] the [district court] to rule on the dispositive issue of whether the mineral reservation in the Bell Deed includes geothermal resources." The district court did so in a May 26, 2011, Memorandum Decision and Order, where it held that the Bell Deed's mineral reservation had severed the mineral and surface estates, and that "the scope of [Bedrock's] mineral estate includes geothermal resources." Based on this, the court granted Bedrock's motion for summary judgment, and entered judgment for Bedrock on July 11, 2011. Ida-Therm timely appealed to this Court.

## II.
## ISSUE ON APPEAL

I.   Did the district court err in determining that the Bell Deed's reservation of "all the oil, gas, and minerals, in, on, or under the surface" of the land included geothermal resources?

## III.
## DISCUSSION

### A.  Standard of Review.

In reviewing grants of summary judgment, this Court uses the same standard as the district court. *Cnty. Of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment must be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In determining whether a genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law, this Court exercises free review. *Doe v. City of Elk River*, 144 Idaho 337, 338, 160 P.3d 1272, 1273 (2007).

When reviewing a district court's interpretation of a deed, the standard of review "depends on whether the instrument is ambiguous." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Whether a deed is ambiguous is a question of law, over which we exercise free review. *Id.* "Interpretation of an ambiguous document presents a question of fact, and we will defer to the findings of the trial court so long as those findings are supported by substantial and competent evidence." *Id.* However, interpretation of an unambiguous document is a question of law, and a matter of free review. *Id.*

**B. The district court erred in concluding that a deed's reservation of "all the oil, gas, and minerals, in, on, or under the surface" of the land includes geothermal resources.**

The district court determined that the Bell Deed's mineral reservation severed the mineral estate from the surface estate, and that geothermal resources were included in the scope of the mineral estate. It began by noting that, "[n]o party to this action asserts the Bell Deed is ambiguous. The Bell Deed was executed in 1946, and the parties agree there is *no* extrinsic evidence of the grantor's intent." The district court then reiterated that "[t]he parties agree it would be almost impossible to determine, based on extrinsic evidence, whether the grantor specifically intended to reserve geothermal resources." Accordingly, the district court concluded that it would be injudicious to conclude that "mineral" was ambiguous, and held that the term is unambiguous, and that its meaning and "the intent of the parties should be ascertained as a matter of law." The district court faced a lack of Idaho precedent to guide this inquiry; therefore, following other state and federal cases, the court determined that "[t]he Bell Deed reserved to the grantor all minerals," and concluded "the grantor thereby severed the *mineral* estate from [Ida-Therm's] estate." After examining the scope of the mineral reservation, the court stated:

> [T]he parties to the Bell Deed, by severing the mineral estate, had a general intent to convey those commercially valuable, underground, natural resources of the [Bell] Property that are distinct from the soil itself. The evidence before this Court suggests geothermal resources are commercially valuable natural resources underlying the [Bell] Property. Furthermore, geothermal resources are distinct from the soil, and there is no evidence that Bedrock's development and use of the geothermal resources would destroy the surface or [the surface owners'] enjoyment of the surface. In the absence of an expressed specific intent to the contrary, this Court concludes the scope of [Bedrock's] mineral estate includes geothermal resources, as indicated by the general intentions and expectations evident in the Bell Deed.

On appeal, Ida-Therm brought several challenges to the district court's grant of summary judgment. It first argued—though it cited no authority for the proposition—that the plain meaning of "mineral" does not include geothermal resources. It then contended, based on principles set forth in *Stucki v. Parker*, 108 Idaho 929, 703 P.2d 693 (1985), and other cases, that the Bells never intended to sever the mineral and surface estates. Ida-Therm further argued that the Geothermal Resources Act, I.C. § 42-4001, *et seq.*, does not define geothermal resources as a mineral, and that this definition should control in the instant case.

Bedrock argues in response that Ida-Therm's plain meaning argument is unsubstantiated and begs the question. It further contends that the language in the Bell Deed evinced a general intent of the parties to sever the mineral and surface estates, and agreed with the district court that "mineral" should include geothermal resources "because such resources are functionally similar to other minerals[,] are not necessary to the use and enjoyment of the surface estate, and because a broad reading of 'minerals' encourages title certainty." Bedrock asserts that the cases and statutes cited by Ida-Therm, though perhaps relevant to interpreting "geothermal" in other contexts, are simply inapplicable to this particular conveyance.

The sole issue for this Court is whether the district court, in finding that the reservation of minerals includes geothermal resources, correctly granted Bedrock's Motion for Summary Judgment. Because we find that "mineral" is ambiguous, and because ambiguous grants in deeds are construed against the grantor, we construe the grant in favor of Ida-Therm and reverse the district court.

### 1. Deeds and ambiguity.

Before this Court can review the district court's interpretation of the Bell Deed, we must first determine whether the deed's mineral reservation is ambiguous. In doing so, we ask whether the reservation is "reasonably subject to conflicting interpretation." *C & G*, 135 Idaho at 766, 25 P.3d at 76. If a deed contains inconsistencies that "throw [] a 'shadow of ambiguity' over the instrument," it will "warrant the introduction of parol evidence as an aid to discovering the intention of the parties." *Gardner v. Fliegel*, 92 Idaho 767, 771, 450 P.2d 990, 994 (1969). For example, in *Gardner*, this Court examined a deed that conveyed a parcel of property, "[l]ess a strip of land 30 feet wide off the East side for roadway." *Id.* There, we found that the reservation was ambiguous, because "[o]n the one hand it expresses the intent to retain the fee to the strip in the grantor," but "[o]n the other hand it expresses the intent to create an easement for roadway over the strip in favor of the grantor." *Id.* Because these two reasonable interpretations were irreconcilable, this Court resorted to parol evidence to discern the intent of the parties. *Id.* Similarly, in *Latham v. Garner*, 105 Idaho 854, 855, 673 P.3d 1048, 1049 (1983), this court examined two grants of "easements and rights-of-way" to the defendants that were "exclusively for their use, and unto their successors and assigns forever." We reasoned that "[t]he phrase 'exclusively for their use' lends itself, without contortion, to a number of interpretations." *Id.* at 858, 673 P.3d at 1052. Namely, that:

The instrument could be interpreted as (1) the grant of an easement right of way to the grantee, the defendants herein, to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or, (3) as the grant of a fee simple estate to the grantee.

*Id*. We thus held that the deed was "reasonably subject to conflicting interpretations and as such is ambiguous." *Id.*

As noted by both parties, and the district court, whether a mineral reservation is ambiguous is an issue that has divided courts. *Compare Kinney v. Keith*, 128 P.3d 297, 303 (Colo. App. 2005) (holding that "'[m]inerals' is not capable of a definition of universal application; it is a general word susceptible of different meanings, and therefore, courts look to extraneous evidence to reveal the parties' intent, including the circumstances surrounding the reservation at issue."), *with Spurlock v. Santa Fe Pac. R. Co.*, 694 P.2d 299 (Ariz. App. 1984) (finding the opposite, due predominantly to policy concerns). The rationale behind treating "mineral" as ambiguous was explained by the court in *Spurlock*:

Courts that hold mineral to be an ambiguous term are often thrust into a complex and hopeless search for the "true intentions" of the original contracting parties. With the passage of decades and a series of mesne conveyances, this task can be impossible. And, as many courts have noted, attempting to discover the parties' specific intent regarding a substance that was unknown to anyone at the time of the original conveyance is antilogical. *E.g., Northern Nat. Gas Co. v. Grounds*, 441 F.2d 704, 714 (10th Cir.), *cert. denied*, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971). The most consistent results produced by these cases are title uncertainty and the need to litigate each mineral reservation to determine what substances it encompasses.

694 P.2d at 307. The *Spurlock* court cited policy reasons for holding the term minerals to be unambiguous:

An established rule of law provides for the reliable means of ascertaining mineral ownership. This certainty is important because of the heavy investment of capital required to develop petroleum and other mineral resources. Without an established rule of law, the courts would necessarily be called upon to interpret numerous reservations.

*Id.* at 307−308.

The district court decided to adopt the *Spurlock* approach and treated the mineral reservation here as unambiguous. This is because "[n]o party to this action asserts the Bell Deed is ambiguous," and that "[t]he Bell Deed was executed in 1946, and the parties agree there is *no* extrinsic evidence of the grantor's intent." Thus, the district court concluded:

[I]t would be injudicious to conclude the term mineral is ambiguous. Such a holding would unnecessarily encourage litigation to determine the scope of grants or reservations similar to that of the Bell Deed. Discovering the grantor's intent would be particularly difficult in this case where execution of the Bell Deed occurred in 1946. The parties agree it would be almost impossible to determine, based on extrinsic evidence, whether the grantor specifically intended to reserve geothermal resources. This Court therefore concludes the meaning of the word "mineral" and the intent of the parties should be ascertained as a matter of law.

While we recognize the concerns raised by the district court, we hold that "mineral," as used in the Bell Deed, is ambiguous. At the outset, we note that "mineral" has not been defined by Idaho case law. Moreover, it has no uniformly recognized legal meaning. Indeed, other courts making this determination have arrived at a variety of definitions of "mineral":

> Minerals have been defined as substances having a value separable from that of the soil in which they are located. Another test for determining whether a substance is a mineral requires that the substance have a definite chemical composition by which it can easily be recognized. Yet another test determines that substances which are minerals within the scientific, geological, and practical meanings of the term constitute minerals within the purview of a clause reserving all minerals.

53A AM. JUR. 2D *Mines and Minerals* § 2; *see also Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 311 (Tex. App. 2001) (holding that water is not a mineral because it is "not 'rare' and 'exceptional' in character," and is too closely related to the surface itself); *Bambauer v. Menjoulet*, 29 Cal. Rptr. 874, 876 (Cal. App. 1963) (concluding that though gravel "belongs to the mineral kingdom," it was not a part of a mineral reservation because it lacked "a definite chemical composition by which it can be easily recognized"); *N.M. & Ariz. Land Co. v. Elkins*, 137 F. Supp. 767, 771 (D.N.M. 1956) (holding that uranium and thorium, "being minerals within the scientific, geological and practical meanings, would certainly constitute minerals" in a reservation clause). Neither party here cited to a dictionary in making their case, but these definitions are just as varied:

> [**M**]ineral, *n.* **1.** Any natural inorganic matter that has a definite chemical composition and specific physical properties that give it value <most minerals are crystalline solids>. [] **2.** A subsurface material that is explored for, mined, and exploited for its useful properties and commercial value. **3.** Any natural material that is defined as a mineral by statute or caselaw.

BLACK'S LAW DICTIONARY 1015 (8th ed. 2004).

Applying the various definitions of "mineral" above leads to widely divergent results: geothermal resources have value separable from the soil, but it is unclear if they have an easily recognizable, definite chemical composition; they are not crystalline solids, yet are exploited for commercial value; and while some Idaho statutes recognize geothermal resources as minerals, others do not.[1] And the length of the parties' briefing itself is at least incidental evidence of the ambiguity of "mineral"; if the term truly had a plain meaning, it would seem that sharing it would not have been so complicated. Put simply: the term "mineral," as used in the Bell Deed, is precisely the sort of language which we have previously held to be reasonably subject to conflicting interpretation, and thus is ambiguous.

Despite the concerns raised by the *Spurlock* court, treating "mineral" as ambiguous here would not "unnecessarily encourage litigation." As Ida-Therm noted, as a practical matter, the lack of Idaho case law regarding mineral reservations suggests that these issues are rarely brought before our courts. More fundamentally, this Court has repeatedly held that seeking and effecting "the real intention" of contracting parties is its primary concern. *C & G*, 135 Idaho at 766, 25 P.3d at 79. If finding the real intention requires litigation, so be it; but a lengthy search for the correct result is preferable to precipitously seizing upon the wrong one. This leads to a further concern raised by the district court—that here, "it would be almost impossible to determine, based on extrinsic evidence, whether the grantor specifically intended to reserve geothermal resources." Again, this Court is mindful of the difficulties presented by cases bereft

---

[1] One of those statutes, the Geothermal Resources Act (GRA), formed the basis of Ida-Therm's argument that the GRA definition of "geothermal resources" should control in this case. But this argument fails because it ignores the GRA's clear prefatory limitations—that its definitions are only effective "[w]henever used in this act." I.C. § 42-4002. The GRA deals with permitting for geothermal wells, not private conveyances of geothermal rights, which is the issue here. *See* I.C. § 42-4001, *et seq*. It is rudimentary that a statute cannot override terms which exist outside its expressly fixed bounds; thus, the GRA's definitions have no control over the language of the Bell Deed. And any persuasive value that the Act might have, perhaps as evidence of the Legislature's intent to define mineral in a particular way, is undercut by other statutes that define mineral in a precisely opposite fashion. *Compare* I.C. § 42-4002(c) ("Geothermal resources are found and hereby declared to be sui generis, being neither a mineral resource nor a water resource. . . ."), *with* I.C. § 47-701(1), which pertains to minerals located on state-owned lands ("The terms . . . 'mineral,' . . . and 'mineral right' . . . shall be construed to mean and include . . . geothermal resources . . . ."), *and* I.C. § 42-230 ("All ground water having a temperature of two hundred twelve (212) degrees Fahrenheit or more in the bottom of a well shall be classified as a geothermal resource . . . ."). Furthermore, the State recognizes two types of geothermal resources—"a low temperature geothermal resource," which has a temperature greater than 85 but less than 212 degrees Fahrenheit, which is administered pursuant to I.C. § 42-233, and groundwater with a temperature of 212 degrees Fahrenheit or more, which is administered pursuant to Chapter 40, Title 42, Idaho Code. I.C. § 42-230(a)(1) and (2). It might also be observed that all of these statutory definitions were enacted well after the Bell Deed was executed, making them irrelevant to the interpretation of that deed. The Legislature's inconsistent approach to defining "geothermal resources" precludes the use of statutes to determine whether those resources are minerals, and does nothing to resolve the ambiguity of "mineral" here. Rather, it lends support to the conclusion that a good deal of ambiguity exists.

of facts. But parol evidence is not the only tool by which courts can interpret ambiguous language. As discussed in the following section, canons of construction can be applied to document language, regardless of the amount of extrinsic evidence at hand, in an effort to find the parties' true intent. Doing the best we can with the facts we have might be difficult, but it is where the ambiguity of "mineral" necessarily leads us. And mutual agreement among the litigating parties—however well intentioned—cannot transmute ambiguous text into something clear-cut. We thus hold that "mineral," as used in the Bell Deed, is ambiguous.

### 2. The Meaning of the Mineral Reservation.

Having held that the mineral reservation in the Bell Deed is ambiguous, we turn now to interpreting its meaning. This Court interprets a deed's language as follows:

> In interpreting a deed of conveyance, the primary goal is to seek and give effect to the real intention of the parties. [] Where a deed is ambiguous, interpretation of the grantor's intent is a question of fact determined from the instrument itself, as well as from the surrounding facts and circumstances. [] Where a deed is unambiguous, however, the parties' intent must be ascertained from the language of the deed as a matter of law without resort to extrinsic evidence. []

*C & G*, 135 Idaho at 766, 25 P.3d at 79 (citations omitted). We start with the face of the deed. The Bell Deed is a warranty deed conveying the described real property, together with all appurtenances, to C.C. Mann and his heirs and assigns. The deed specifically reserves "oil, gas, and minerals." Real property consists of lands and that which is affixed or appurtenant to lands. I.C. § 55-101. "Lands are the material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance." I.C. § 55-101A. "A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." I.C. § 55-604. A deed reservation "should be not indefinite or uncertain. . . . [F]ailure of a grantor to clearly express the kind of rights retained on a conveyance may result in the entire fee title passing to the grantee, without reservation." C.J.S., Deeds, § 357. Further:

> In case of doubt, an exception or reservation in a conveyance is construed in favor of the grantee rather than of the grantor. In general, the court views grants in a deed expansively and reservations restrictively, so where there is any uncertainty or ambiguity in the language used, the grantee should have the benefit of the doubt or the ambiguity.

C.J.S., Deeds, § 360.

This Court defers to the district court's findings of fact when interpreting ambiguous documents. Here, the district court found that there were virtually no extrinsic facts that could illuminate the intent of the Bell Deed. It was executed in 1946, and "the parties agree there is *no* extrinsic evidence of the grantor's intent"—which would include whether the Bells intended to reserve geothermal resources for themselves, or grant them to C.C. Mann. Based on our review of the record, we accept these findings. Without any extrinsic evidence reflecting on the intent of the grantors, we turn to the rules of construction outlined above. That is, we construe the reservation narrowly and the grant broadly. In other words, we construe the grant in favor of C.C. Mann and his successors, and hold as a matter of law that the geothermal resources are appurtenant to the Bell Property. Thus, Ida-Therm is the rightful lessee of the mineral rights. The contrary holding of the district court is reversed.

## IV.
## CONCLUSION

We reverse the district court's grant of summary judgment in favor of Bedrock, and hold as a matter of law that: 1) the Bell Deed's mineral reservation does not include geothermal resources; and 2) that C.C. Mann's successors are the owners of the geothermal resources. Costs on appeal are awarded to Ida-Therm.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.