# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43326

| | | |
|---|---|---|
| THE DAVID AND MARVEL BENTON TRUST, | ) ) ) | Pocatello, September 2016 Term |
| Plaintiff-Respondent, | ) ) | 2016 Opinion No. 131 |
| v. | ) ) | Filed: November 16, 2016 |
| DOROTHY B. MCCARTY, | ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) ) | |

_____

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Gregory W. Moeller, District Judge.

The district court's summary judgment is <u>affirmed</u>. Costs and attorney fees on appeal are granted to the Trust.

Cox, Ohman & Brandstetter, Chtd., Idaho Falls, attorneys for appellant. John Ohman argued.

Cooper & Larsen, Chtd., Pocatello, attorneys for respondent. Gary Cooper argued.

W. JONES, Justice

## I. NATURE OF THE CASE

Dorothy B. McCarty ("McCarty" or "Appellant") appeals a grant of summary judgment in which the district court held that a quitclaim deed granting certain real property to McCarty (the "Quitclaim Deed") was unenforceable as a matter of law because it did not contain an adequate description of the subject property. The following issues were raised on appeal: (1) whether Idaho Code section 55-606 bars the grantors' successors in interest from challenging the enforceability of the Quitclaim Deed that the grantors themselves executed; (2) whether the district court erred in striking evidence of the grantors' intent at the time they executed the deed; (3) whether the district court erred in finding that the Quitclaim Deed did not contain an adequate description of the subject property; (4) whether the district court erred by holding that the

1

grantors were thereafter prevented from transferring the property by an amendment to the trust documents; and (6) whether the district court erred in concluding that the doctrines of 'reformation,' 'interlineation,' and 'correction deed' were not applicable. Both sides request attorney's fees and costs on appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 1990, David E. Benton ("David") and Marvel C. Benton ("Marvel" and with David, the "Bentons") established a joint revocable living trust in Bonneville County, Idaho, which they entitled the "DAVID AND MARVEL BENTON TRUST, dated April 23, 1990" (the "Trust"). The Trust's foundational documents named David and Marvel as both the "Grantors" and the "Trustees" of the Trust.

On July 1, 2010, David and Marvel executed the Quitclaim Deed, which purported to convey certain real property owned by the Trust to McCarty. The property subject to the Quitclaim Deed is described therein as follows:

> The property at 550 Linden Drive and the building known as Benton Engineering building located upon the property and all adjacent parking lots to the South of the Building and to the West of the Building and right of access into the parking lot located at 550 Linden Drive, Idaho Falls, Idaho located in Bonneville County and more commonly known as the Benton Engineering Office Building.

On November 1, 2010, David and Marvel executed the Second and Irrevocable Amendment to the David and Marvel Benton Trust (the "Second Amendment"). The Second Amendment named two of David and Marvel's children—David Eugene Benton II ("David II") and Barbara Baker ("Baker")—as "Family Co-Trustees." It established that any future action taken by the Trust would have to be authorized by at least one Family Co-Trustee.

On April 24, 2012, McCarty attempted to record the Quitclaim Deed with the Bonneville County Recorder's Office. Shortly thereafter, she received a letter from the Bonneville County Assessor indicating that: (1) "grantor name is not identical to record owner's name"; (2) "parcel legal description is not complete"; and (3) "parcel legal description is not sufficiently certain for accurate assessment."

On May 4, 2012, McCarty recorded a revised version of the Quitclaim Deed (the "Revised Quitclaim Deed") with the Bonneville County Recorder's Office. The Revised Quitclaim Deed contained an attachment describing the conveyed property as follows:

> Beginning at the Northeast corner of the Benton Engineering office building property, said point lying S89°30'30"E, 120.52 feet and S65°52'00"E, 103.50 feet

2

and S59°34'00"E, 162.95 feet of the Northwest corner of Linden Park Addition, Division No. 1 to the City of Idaho Falls, Bonneville County, Idaho, said point of beginning lying on the westerly ROW line of Linden Drive, and running thence N59°34'00"W, along the northerly line of said property, 128.00 feet; thence S30°26'00"W, 123.00 feet; thence S50°29'26"E, 116.18 feet to said westerly ROW line of Linden Drive; thence along said westerly line, 142.05 feet along the arc of a 1096.74 foot radius curve to the left, whose long chord bears N35°47'57"E, 141.95 feet to the point of beginning. Said property lying in the North half of Section 20, T. 2 N., R. 38 E.B.M.

Contains 0.375 acres, more or less.

The Revised Quitclaim Deed was signed by David and Marvel but was not signed by either of the Family Co-Trustees.

On April 9, 2013, the Trust filed a Complaint to Quiet Title and for Accounting (the "Complaint") seeking a determination that McCarty had no right or interest to any the Trust's real property, including the property described in the Revised Quitclaim Deed, and seeking a monetary judgment against McCarty for the use, rents and profits of said property since July 1, 2010.

On September 25, 2013, McCarty moved for summary judgment against the Trust. On January 3, 2014, the Trust moved for summary judgment against McCarty. In conjunction with the cross-motions for summary judgment, McCarty filed twenty-four affidavits, many of which contained testimony as to what David and Marvel told the respective affiants regarding their intent in drafting the Quitclaim Deed. On January 3, 2014, and September 2, 2014, the Trust moved to strike certain testimony offered by McCarty.

On October 31, 2014, the district court issued its Memorandum Decision on Parties' Cross-Motions for Summary judgment. In that decision the district court held as follows: (1) "the Court will strike all statements from the affidavits [filed by McCarty] that purport to describe David and Marvel's intent, understanding, and/or capacity on relevance grounds. . . . David and Marvel's intent at the time they signed the deeds is not a material fact for purposes of the issue presented on summary judgment"[1]; (2) "whether a property description is legally sufficient is a question of law for the court to decide"; (3) "the original Quitclaim Deed is void because it did not provide an adequate legal description of the property"; (4) "[b]ecause the [Second

---

[1] With respect to the Quitclaim Deed, the district court reasoned that "McCarty does not allege that the legal description used was not the one she, David, and Marvel intended to use. If the legal description they chose to use was inadequate, then neither McCarty nor the grantors can work around the statute of frauds by explaining their intent."

3

Amendment] unambiguously bars David and Marvel from acting as the only two signors on behalf of the trust, they did not have power to sign the [R]evised Quitclaim Deed in [sic] behalf of the Trust"; (5) "[t]he doctrines of reformation, interlineation, and 'correction deed' do not apply and cannot remedy the inadequacies of the first Quitclaim Deed."

On January 16, 2015, McCarty moved for reconsideration of the district court's decision on summary judgment. Therein, McCarty repeated her arguments that the property description in the Quitclaim Deed was sufficient as a matter of law. She attached new expert affidavits in support along with a property survey performed by Kim Leavitt.

On April 17, 2015, the district court entered its Memorandum Decision and Order on Defendant's Motion for Reconsideration. Therein, the district court denied McCarty's motion for reconsideration. It noted that: (1) "[j]ust because an expert believes he or she can interpret the intent of a legal description does not mean it complies with the statute of frauds," and (2) "the new survey prepared by Leavitt supports the [c]ourt's prior ruling. Leavitt's recent survey utilizes a 'reconciled boundary' which clearly could not have originated solely from the description contained in the [Quitclaim Deed]."

### III. STANDARD OF REVIEW

**A.     This Court Reviews Evidentiary Rulings for Abuse of Discretion.**

> When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000).

*State v. Jones*, 160 Idaho 449, __, 375 P.3d 279, 280 (2016).

**B.     This Court reviews Grants of Summary Judgment De Novo.**

> On appeal from the grant of a motion for summary judgment, we review that decision de novo but apply the same standard used by the district court in ruling on the motion. *McColm–Traska v. Valley View Inc.*, 138 Idaho 497, 65 P.3d 519 (2003); *Carnell v. Barker Management, Inc.*, 137 Idaho 322, 48 P.3d 651 (2002). As a general rule, this Court will affirm the judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Carnell*, 137 Idaho at 327, 48 P.3d at 656. When making its determination, the Court construes all facts in the light most favorable to the nonmoving party. *Id.*

4

*Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 662, 115 P.3d 751, 753 (2005).

## IV. ANALYSIS

**A.     Idaho Code section 55-606 does not bar the Trust's quiet title action as a matter of law.**

Idaho Code section 55-606 provides that:

> Every grant or conveyance of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or encumbrancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid judgment lien that is first duly recorded.

I.C. § 55-606.

McCarty asserts on appeal that the statutory language "conclusive against the grantor" serves to bar a grantor or successor from ever challenging the enforceability of a document purporting to grant or convey property. McCarty argues, therefore, that "[b]y law, the trust cannot execute and deliver deeds to McCarty and then, years later, after the Trust has been taken over by David II and Barbara Baker, file a quiet title action to challenge its own Deeds and quiet title *to itself*." (Emphasis in original).

McCarty has misinterpreted Idaho Code section 55-606. Idaho Code section 55-606 is a recording statute. It stands for the proposition that an otherwise valid and enforceable grant or conveyance is superior to any interest claimed by the grantor or any future successor in interest, purchaser, or encumbrancer, unless a purchaser or encumbrancer acted in good faith and first duly recorded. Idaho Code section 55-606 does not, and has never been interpreted to, bar grantors and their successors from challenging the enforceability of deeds or liens.[2] The reason

---

[2] In support of her interpretation, McCarty cites *Hartly v. Stibor*, 96 Idaho 157, 160, 525 P.2d 352, 355 (1974). *Hartly* is not relevant here. In *Hartly* this Court overturned a lower court dismissal of a grantee's action to quiet title. 96 Idaho at 161, 525 P.2d at 356. The lower court had reasoned that because the grantor had retained possession of the property after conveying the deed, the deed must have been intended to be effective only after the grantor's death. *Id.* at 159, 525 P.2d at 354. This Court reasoned that "[w]here there is a valid delivery of the deed, with the requisite intent on the part of the grantor, the fact that the grantor retains possession of the premises does not necessarily invalidate the deed." *Id.* at 160, 525 P.2d at 355. In coming to the conclusion that dismissal was improper, this Court did not discuss Idaho Code section 55-606 beyond quoting its language in passing. *Id.* We most certainly did not find that a grantor is unable to challenge the enforceability grantee's deed due to Idaho Code section 55-606. *Id.* Indeed, the fact that this Court actually reviewed the grantor's challenge to the enforceability of the grantee's deed on the merits directly contradicts McCarty's interpretation of the case.

As additional support for her arguments, McCarty cites *Carlson v. Stair*, 472 P.2d 598, 599 (Wash. Ct. App. 1970), *Standring v. Mooney*, 127 P.2d 401 (Wash. 1942), *Kessinger v. Logan*, 779 P.2d 263, 267 (Wash. 1989), and *Maxwell v. Sullivan*, 166 So. 575, 576 (Fla. 1936). Unlike *Hartly*, these out-of-state cases actually do

for this is obvious from the language of the statute. Idaho Code 55-606 explicitly applies only where there has been a "grant or conveyance." I.C. § 55-606. Conversely, where no grant or conveyance ever legally occurred, Idaho Code section 55-606 is not applicable.

A conveyance is made under Idaho statue "by an instrument in writing." I.C. § 55-601. In addressing Idaho Code section 55-601, this Court has established that "it is fundamental that a written instrument purporting to convey real property must contain a sufficient description of the property." *Worley Highway Dist. v. Kootenai Cnty.*, 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). A document that does not contain a sufficient property description cannot convey title. *Id.* Accordingly, in *Worley*, where resolutions made by the Kootenai County Board of Commissioners "contained no description of the property to be conveyed," this Court determined that they were "insufficient to pass title." *Id.*

Where a legal description in a document purporting to convey a property interest is insufficient as a matter of law, the property interest is not conveyed. Where there has not been a conveyance (or grant), Idaho Code section 55-606 is not applicable. It follows that McCarty's argument puts the cart before the horse. She attempts to argue that Idaho Code section 55-606 prevents a party from raising a legal challenge as to the enforceability of a deed, but applying Idaho Code section 55-606 already requires the assumption that the legal challenge is meritless. This Court will not read a statute to create an absurd result. Accordingly, we hold that Idaho Code section 55-606 does not prevent a grantor or a successor from challenging, in a court of law, the enforceability of a written document purporting to convey property on the basis of an inadequate property description.

**B.     The district court did not err by striking certain testimony submitted as evidence by McCarty as irrelevant.**

In order to be enforceable, a description of real property must adequately describe the property such that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009) (citing *Garner v. Bartschi*, 139 Idaho 430, 435, 80 P.3d 1031, 1036 (2003)). Whether a description is

conclude that a grantor cannot legally challenge a deed that he or she executed, however, they do not do so by interpreting a statute similar to Idaho Code section 55-606. Instead, the holdings in these cases rest on theories of estoppel. McCarty did not argue estoppel before this Court. Accordingly, this Court refrains from addressing whether a grantor is prohibited from challenging the enforceability of his or her own deed based on theories of estoppel.

such that the property can be 'exactly' identified is an objective determination made by the court. This objective determination is not affected by the understanding or intention of the contracting parties at the time they drafted the property description. Such considerations are irrelevant. They do not aid the court in determining whether the document itself, standing alone (including with any outside materials directly referenced therein), meets the necessary qualifications.

The question before the district court in this case was whether the Quitclaim Deed contained an adequate description of the property such that it was enforceable as a matter of law. This question is entirely separate from how the Bentons' interpreted their own deed at the time it was drafted. Accordingly, any evidence as to the Bentons' understanding or intentions with respect to the Quitclaim Deed are entirely irrelevant and were properly excluded by the district court.

Furthermore, Idaho precedent is abundantly clear that extrinsic evidence is not permitted in order to determine the sufficiency of a property description in a document purporting to convey real property (unless that extrinsic evidence is specifically referenced in the document itself).

> An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing, with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the particular parties negotiated, and supplying a description thereof which may have been omitted from the writing.

*Garner*, 139 Idaho at 435, 80 P.3d at 1036 (quoting *White v. Rehn*, 103 Idaho 1, 2, 644 P.2d 323, 324 (1982)). Where a description of property is inadequate, "allow[ing] parol evidence and the surrounding circumstances to be considered would be to supply a description of the property which was omitted from the writing in order to ascertain and locate the land about which the parties negotiated." *Rehn*, 103 Idaho at 3, 80 P.2d 323 and 325. Indeed, this Court put the issue to rest in *Ray* when it stated that "[t]his Court's precedent from the past 100 years permits a party to ascertain a property description from extrinsic evidence only when the contract or deed references the extrinsic evidence." 146 Idaho at 629, 200 P.3d at 1178.

Despite the 100 years of precedent referenced in *Ray*, McCarty asserts that extrinsic evidence should have been admitted in this case in order to resolve ambiguities in the property description. McCarty cites *Ida-Therm LLC v. Bedrock Geothermal, LLC*, 154 Idaho 6, 293 P.3d

7

630 (2002), *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989), and *C&G, Inc. v. Rule*, 135 Idaho 763, 766, 25 P.3d 76, 79 (2001) in support of her position. On review it is abundantly clear that these cases are not relevant to our analysis here. In *Ida-Therm* this Court allowed parol evidence in order to determine whether the term "mineral" in a mineral rights deed included geothermal resources. 154 Idaho at 8, 293 P.3d at 632. No party in that case challenged the enforceability of the deed. This Court did not analyze the legal sufficiency of the property description therein. *Id. Hall* and *C&G, Inc.* are even less relevant. In those cases, this Court merely noted that parol evidence can be admissible in interpreting deeds. Neither case discussed the legal sufficiency of a property description.

McCarty also argues that the district court erred when it held that "resolution of an ambiguous legal description is a legal question for the Court." McCarty has blatantly and inexcusably mischaracterized the district court's holding. The district court did not hold that resolving an ambiguity in a deed is a question of law. In fact, it clearly stated the exact opposite when it wrote that "interpreting an ambiguous term is an issue of fact." The district court's holding, which McCarty has misconstrued, was that "if a description in a contract transferring real estate is ambiguous on its face, it is insufficient to transfer the property" and "[w]hether a contract is ambiguous is a question of law."

In other words, the district court held that it is not within a court's purview to resolve an ambiguous legal description of property where the legal sufficiency of that description has been challenged. Once the court determines that the property description in a document purporting to convey real property is ambiguous (a legal determination) the document becomes unenforceable and there is no reason for the court to resolve the ambiguity (which would be a factual determination).

Because McCarty has ignored 100 years of legal precedent, cited to cases that are irrelevant, and blatantly mischaracterized the district court's holding, we hold that the district court did not err by striking testimony that was both irrelevant and controverted the parole evidence rule.

**C.      The district court did not err in granting summary judgment to the Trust.**

> *1.      The district court did not err in determining that the legal description in the Quitclaim Deed was insufficient as a matter of law.*

Both Idaho Code section 9-503 and Idaho Code section 9-505(4) (the "Statute of Frauds") provide that real property may only be conveyed by law or in writing:

8

No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

I.C. § 9-503.

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . .

4. An agreement for the leasing, for a longer period than one (1) year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged

I.C. § 9-505.

"It is fundamental that a written instrument purporting to convey real property must contain a sufficient description of the property." *Worley*, 98 Idaho at 928, 576 P.2d at 209. "A description of real property must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *Ray*, 146 Idaho at 629, 200 P.3d at 1178 (citing *Garner*, 139 Idaho at 435, 80 P.3d at 1036). In order to exactly identify the property that is being conveyed, "a description contained in a deed [must be written such that] quantity, identity, or boundaries can be determined." *Garner*, 139 Idaho at 435, 80 P.3d at 1036 (quoting *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 135 Idaho 239, 244, 16 P.3d 915, 920 (2000)).

In accordance with the above standard, this Court determined in *Kellogg* that an agreement purporting to convey "the lodge and the land on which it is located, along with the ski lift" (identified elsewhere in the agreement as the 'Tamarack Lodge" and "Chair Lift No. 4") was sufficient as a matter of law. 135 Idaho at 245, 16 P.3d at 921. This Court reasoned that "the quantity of land was only the amount directly underneath the lodge, and not some other, larger parcel within the ski resort area." *Id.* Accordingly, "it was possible for someone to identify exactly what property was being conveyed" from the property description. *Id.*

9

Conversely, in *Garner*, this Court reviewed a contract describing the property as "Bartschi Property, City ____, Zip 83252, legally described as approx. 500 acres of mountain property." 139 Idaho at 434, 80 P.3d at 1035. An addendum to the contract described the property as "Acreage: As deemed by Bear River County Platt and Tax Notices to be 512 acres." *Id.* The tax notices listed the lots the Bartschis owned as well as the acreage of each. *Id.* This Court held that the descriptions in the contract, addendum, and tax notices were insufficient to convey the property as a matter of law. *Id.* It reasoned that "[w]hile it may be possible for someone to identify the property being conveyed by the Bartschis to Garner by referring to the descriptions in the tax notices . . . one cannot tell exactly what property was being conveyed by the Bartschis merely by the descriptions contained in those referenced documents." *Id.* at 435, 80 P.3d at 1036.

Following *Garner*, this Court reviewed the sufficiency of a contract for the sale of real property in *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 92 P.3d 526 (2004). There, the contract described the property being sold as "the real property situated in Ada County, Idaho located at 1400 West Floating Feather Road, consisting of approximately ninety (90) acres . . . however excluding the residential dwelling (which will include no more than five acres) and improvements identified below (herein called 'Premises')." *Id.* at 278, 92 P.3d at 528. The Premises were described as "existing residential dwelling situated on the Premises together with no more than five (5) acres immediately surrounding the proposed residential development (which five (5) acres will include the existing tennis court, volleyball court, and swimming pool), the precise size, location, dimensions and configuration of which shall be mutually determined by Seller and Buyer." *Id.* This Court held that this property description was not sufficient as a matter of law. *Id* at 283, 92 P.3d at 535. It reasoned that "[a]lthough the Agreement provides that the parcel excluded from the sale would include the land upon which the residence, swimming pool, tennis court, and volleyball court were located, the excluded property was not limited to such land." *Id.* at 283, 92 P.3d at 533.

In *Ray*, this Court was again presented with an insufficient property description. 146 Idaho at 630–31, 200 P.3d at 1179–80. In that case the contract at issue contained only the physical address of the property and lacked any further description. *Id.* at 627, 200 P.3d at 1176. This Court held that "a property description consisting solely of a physical address does not satisfy the statute of frauds." *Id.* at 630–31, 200 P.3d 1179–80. This Court reasoned that "[w]e

10

are unwilling to create an area of unsettled law by holding that a real property description that does not allow a person to determine exactly what property the seller is conveying to the buyer satisfies the statute of frauds." *Id.* at 630, 200 P.3d 1179.

McCarty contends that the district court erred in determining that the legal description in the Quitclaim Deed was insufficient as a matter of law. She asserts that "the Quitclaim Deed clearly *identifies* the property conveyed by the Deed" and "the *boundaries* of the property conveyed are easily determined from the face of the Deed." (Emphasis in original). McCarty even goes so far as to argue that "the property description on page 1 of the Quitclaim Deed is not only sufficient *in all* respects, it is *superior* to the metes and bounds description and *takes precedence* over the metes and bounds description." (Emphasis in original). She cites minimal case law for these propositions, instead relying on affidavits of professional engineers and surveyors.

McCarty's assertions are without merit. The property description contained in the Quitclaim Deed does not 'exactly' identify the property that it allegedly conveyed, either through the use of landmarks or by setting boundaries.

The property description in the Quitclaim Deed can be broken down as follows: (1) "[t]he Property at 550 Lindon Drive"; (2) "the building known as the Benton engineering building located upon the property"; (3) "all adjacent parking lots to the South of the Building and to the West of the Building"; and (4) a "right of access into the parking lot located at 550 Linden Drive." This description gives an address and identifies certain alleged landmarks thereon. It follows that under this Court's precedent in *Kellogg*, the Quitclaim Deed might have been sufficient to transfer the land directly under those identified landmarks. However, McCarty claims that the Quitclaim Deed conveyed significantly more property that just the identified landmarks. Specifically, she asserts title to: (1) the curtilage located around the building; (2) grass lawns (including a strip of grass extending along the west paved parking lot area); and (3) paved parking area that is not directly south or west of the building. On review of the maps provided to this Court, it is clear that this additional land, which is not identified or referenced in the property description, is significant in size. Accordingly, this case is less similar to *Kellogg* than it is to *Lexington Heights*. In *Lexington Heights*, this Court made it clear that identifying certain landmarks within a piece of property is not legally sufficient where the conveying document purports to convey more than that just those landmarks. *Lexington Heights*, 140 Idaho

11

at 283, 92 P.3d at 533. The same principle proves controlling for our analysis here. The Quitclaim Deed has identified landmarks, but McCarty has not limited her claims to those landmarks. Because the property description does not identify or describe this additional claimed property, it cannot be sufficient to convey said property as a matter of law.

McCarty next argues that the property description does not need to describe all of the property contained therein because it sets specific boundaries, and everything within the boundaries is presumed to be included. However, on review of McCarty's proposed boundaries, as set forth in the Leavitt survey, it becomes immediately clear that she could not have ascertained those boundaries from the property description alone (i.e. she must have resorted to extrinsic evidence).

For example, on the Leavitt survey map, one corner of the property uses an "S" shaped boundary line. Such a boundary line could not possibly have been determined solely from the description in the Quitclaim Deed, which makes no reference to any curved boundary. In fact, Leavitt admitted that he referred to the deeds of neighboring properties to determine the boundaries of his map. Likewise, Leavitt's survey shows that the strip of grass bordering the North side of the building extends further West than the boundary of the Western parking lot, creating a narrow 6 x 17 foot section of property. This section of land was not referenced in the Quitclaim Deed and could not have been determined from the property description therein.

Perhaps the most damning evidence that the property description is insufficient, however, comes from the fact that the survey performed by Leavitt does not match the boundaries provided in the Revised Quitclaim Deed. Both of these documents were prepared in support of McCarty's interest, and each purports to describe the property in the Quitclaim Deed. However, while Leavitt determined in his survey that the property conveyed by the Quitclaim Deed was .54 acres in size, the Revised Quitclaim Deed states that the property only contains 0.375 acres. If McCarty herself is submitting inconsistent determinations of the boundaries and acreage of the property, the Court cannot conclude that the description in the Quitclaim Deed exactly describes the property.

Because the description in the Quitclaim Deed does not make it possible to identify exactly what property the seller is conveying to the buyer without resorting to extrinsic evidence, the Quitclaim Deed is unenforceable under Idaho law. The district court did not err when it granted summary judgment in favor of the Trust.

12

2. *This Court need not address the arguments regarding Reformation, Correction Deed, and Interlineation.*

McCarty states in her brief that even if the property description in the Quitclaim Deed was insufficient, the addition of the metes and bounds property description in the Revised Quitclaim Deed is "authorized and enforceable under the legal doctrines of reformation, interlineation, and correction deed." McCarty cites no authority for these arguments in her opening brief; instead, she directs this Court to review her arguments in a reply brief that she previously filed before the district court.

Idaho Appellate Rule 35 provides that:

**(a) Appellant's Brief.** The brief of the appellant shall contain the following divisions under appropriate headings:

. . .

(6) Argument. The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.

I.A.R. 35.

In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. I.A.R. 35. A reviewing court looks to the initial brief on appeal for the issues presented on appeal." *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). *Accord Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) ("A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief."); *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993).

*Hogg v. Wolske*, 142 Idaho 549, 557–558, 130 P.3d 1087, 1095–96 (2996).

McCarty's arguments in regard to reformation, interlineation, and correction deed are presented in conclusory fashion and do not contain any legal reasoning or cite to any authorities or statutes. By failing to include any law or argument on these issues, McCarty has deprived the Trust of a full and fair opportunity to respond. As such, this Court will not consider these arguments.

3. *The district court did not err in determining that the Second Amendment invalidated the Revised Quitclaim Deed.*

Because the Quitclaim Deed is unenforceable, McCarty had no interest in the property at the time the Bentons executed the Second Amendment. Once the Second Amendment was

13

executed, David and Marvel no longer had the power to convey Trust property without the signature of a Family Co-Trustee. It follows that when McCarty attempted to record the Revised Quitclaim Deed, which was signed only by David and Marvel, she could not legally do so because David and Marvel did not have authority to convey the subject property.

McCarty argues that the district court misinterpreted the language of the Second Amendment, and that "the plain language of the Second Amendment . . . *only applies* if the Bentons are '*disabled*' at the time of the 'transaction.'" (Emphasis in original). We disagree.

The Second Amendment reads as follows:

Notwithstanding any other provision of the Trust, the following shall irrevocably apply and control in priority over all other terms and provisions of the Trust:

**Family Co-Trustees**. For so long as either David Eugene Benton or Marvel Cooley Benton are living, there shall be not less than two co-Trustees serving together with them or the survivor of either of them as Family co-Trustees of the Trust. In addition to all other powers granted by law or by the Trust instrument, the Family Co-Trustees shall have those powers specifically granted to a Disability Trustee. The following persons are hereby appointed to serve, commencing upon execution of this instrument, as Family co-Trustees:

1. Barbara Baker

2. David Eugene Benton II

**Authority to Act for The Trust**. For the remainder of Grantors' lives, not less than two signatures shall be required on all transactions of any kind or nature involving the Trust and all of its property and assets. Subject to the disability of Grantors, such two signatures may be made by one Family Co-Trustee and one Grantor, or by two Family co-Trustees. In no event shall Grantors be the only two signors on behalf of the Trust.

The natural interpretation of the above passages is that they establish: (1) Barbara and David are Family Co-Trustees; and (2) "in no event shall Grantors be the only two signors on behalf of the trust." McCarty argues, however, that the qualifier "Subject to the disability of Grantors," which is contained in the second sentence of the Authority to Act subsection, also modifies the third sentence of that subsection. We hold that there is no basis for such a reading. Indeed, it would serve to make the second and third sentences redundant. Accordingly, the district court did not err when it held that "the 2010 Amendment unambiguously prohibits David and Marvel from acting alone as signors on behalf of the Trust, and this restriction applies in all circumstances, regardless of whether David or Marvel are disabled."

**D.      Attorney's fees are granted to the Trust.**

An "award of attorney fees under Idaho Code section 12-121 is not a matter of right to the prevailing party, but is appropriate [] when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Teurlings v. Larson*, 156 Idaho 65, 75–76, 320 P.3d 1224, 1234–35 (2013) (quoting *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009)). An award of attorney's fees to the Trust under Idaho Code section 12-121 is appropriate here. The vast majority of McCarty's arguments, especially with respect to the admission of extrinsic evidence, were brought before this Court despite substantial and incontrovertible case law to the contrary. Furthermore, most of the case law cited by McCarty was irrelevant and that which was not irrelevant provided at best minimal support to her arguments. With respect to the issues of reformation, interlineation, and correction deed, McCarty made no legal argument and cited no case law in her opening brief. Finally, throughout her briefs McCarty misrepresented and ignored the holdings of the district court, which were consistently clear and well-reasoned. For these reasons, we conclude that McCarty pursued her appeal frivolously, unreasonably, and without foundation.

## V. CONCLUSION

The district court's summary judgment is affirmed. Costs and attorneys fees on appeal are granted to the Trust.

Justices EISMANN, BURDIC K and HORTON, CONCUR.

Chief Justice J. JONES, concurring in part and dissenting in part.

With a certain amount of trepidation, I dissent, in part, from the Court's opinion. Although the Court's result is probably warranted under all of the circumstances, I am concerned about the conclusion in Part V, Section C of the opinion that the entire legal description in the Quitclaim Deed is insufficient as a matter of law. I agree that part of the legal description—"all adjacent parking lots to the South of the Building and to the West of the Building and right of access into the parking lot located at 550 Linden Drive"—is insufficient for purposes of a valid conveyance. However, the part of the description which identifies "the building known as Benton Engineering building located upon the property. . . at 550 Linden Drive, Idaho Falls, Idaho located in Bonneville County and more commonly known as the Benton Engineering Office Building," appears to meet the requirements set out by this Court in *City of Kellogg v. Mission Mountain Interests, Ltd. Co.*, 135 Idaho 239, 16 P.3d 915 (2000). In that case, the Court

15

held that the description of a building as "Tamarack Lodge" was sufficient to identify the property being conveyed, with the caveat that "the quantity of land involved was only the amount directly underneath the lodge, and not some other, larger parcel within the ski resort area." *Id.* at 244–45, 16 P.3d at 920–21.

The pertinent question here is whether the legal description is an all-or-nothing proposition. That is, does it stand or fall in its entirety? McCarty has seemingly approached the issue both ways in the written and oral argument she presented to the Court. The overall thrust of McCarty's argument is that the entire legal description is adequate and that she is entitled to the entire property. On the other hand, in a number of instances in her briefing she seems to advance a piecemeal approach, e.g., "it cannot be disputed that the deed conveyed the Benton Engineering building, because it is expressly called out in the deed" and "[w]ithout question, the Quitclaim Deed conveys the Benton Engineering building to McCarty." When asked at oral argument whether the legal description was an all-or-nothing proposition, McCarty's counsel responded with less than absolute certainty.

In my view, the building was identified with sufficient certainty to meet the requirements of this Court's precedent. Therefore, I am not inclined to disqualify the conveyance for lack of certainty with regard to the building. That does not mean that I would give my blessing to the purported transfer of the property to McCarty pursuant to the Quitclaim Deed.

There are some troubling aspects with regard to this purported conveyance. McCarty described one of the grantors, David Benton, as "a civil engineer and land surveyor of many decades." It is hard to conceive that a person with such qualifications would prepare or sign a quitclaim deed with such an amateurish legal description. The Quitclaim Deed was purportedly signed on July 1, 2010, but not notarized at that time, an unusual oversight for an experienced engineer and land surveyor. It was not offered to the county for recording until almost two years later. The deed was purportedly notarized on April 24, 2012, and then submitted for recording with the county recorder on that same date. Strangely, on the same day the Quitclaim Deed was signed, the Bentons also signed a warranty deed purporting to convey the same property, with a slightly different description, to McCarty. That deed was neither notarized nor recorded.

The title to the property was held by "The David and Marvel Benton Trust" but there was no indication on the Quitclaim Deed when it was purportedly signed on July 1, 2010, that any trust was involved in the transaction. It appeared to be a conveyance to McCarty by a husband

and wife acting in their own right. When the deed was submitted to the county for recording on April 24, 2012, there was still no indication of any trust interest in the property. Shortly afterward, the Bonneville County Assessor notified McCarty that the "grantor name is not identical to recorded owner's name." The deed appears to have been re-recorded on May 4, 2012, with the printed word "trust" after the names of the grantors, and the addition on its face, just above the legal description, of the words "Exhibit 'A.'" The deed then had a second page containing what appears to be a proper legal description. It is odd that a person with some sophistication in real estate matters and the trustee of a marital trust would misidentify the grantor of a deed conveying property out of the trust.

Just four months after the Quitclaim Deed was purportedly signed, the Bentons amended their trust to require that any transaction with regard to trust assets had to have the signature of a family co-trustee, as well as their own, in order to be valid. The amendment also provided "[i]n no event at any time shall Dorothy Benton McCarty serve as a Trustee of the Trust or have control over any property or business entity owned by the Trust." The amendment was effective November 1, 2010, a year and a half before the Quitclaim Deed was first recorded. Further, Respondent points out that David Benton executed a First Codicil to his Will on June 30, 2008, stating:

> I hereby state that DOROTHY BENTON MCCARTY does not own any part of the Benton Engineering Office located at 550 Linden Drive, Idaho Falls, Idaho, nor any of the garages or surrounding property. I further declare that DOROTHY BENTON MCCARTY does not own any part of the Benton Engineering business. I specifically direct that upon my death that she will not become the manager of Benton Engineering. I further direct that in the event of my disability or incapacity that she shall not become the manager of Benton Engineering.

The trust amendment and will codicil certainly seemed to be contrary to the intent of the deeds purportedly signed by the Bentons. In this regard, the record contains allegations by the Respondent of lack of mental capacity on the part of David Benton.

Although I tend to think the end result reached by the Court is probably warranted, based upon what is contained in the record, I can't overlook the fact that the building was adequately described in the Quitclaim Deed. For that reason, I would vacate the summary judgment with respect to the building and remand for further proceedings regarding the validity of the purported conveyance.