[No. 28945-8-II.  Division Two.  September 16, 2003.]

SHEILA VERDON, *Respondent*, v. AIG LIFE INSURANCE COMPANY, *Appellant*.

*Christopher L. Neal* (of *Cozen O'Connor*), for appellant.

*John J. Durkin* (of *Troup, Christnacht, Ladenburg, McKasy & Durkin, Inc., P.S.*), for respondent.

ARMSTRONG, J. — AIG Life Insurance Company appeals a summary judgment ruling that Washington State law controls whether Sheila Verdon, its insured, is covered for a serious injury to her right arm. Verdon purchased an accidental death and dismemberment insurance policy from AIG that her employer administered. The question on appeal is whether the plan is part of Verdon's Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA) employment benefits and, thus, interpreted according to federal law, or whether ERISA's "safe harbor provision" exempts it from ERISA, in which case Washington law applies. The answer depends on whether Verdon's employer endorsed the insurance policy. We hold that issues of material fact exist as to whether Verdon's employer endorsed the policy. Accordingly, we vacate the summary judgment and remand for trial.

## FACTS

Sheila Verdon suffered injuries in an auto accident that left her completely unable to use her right arm and hand. At the time of the accident, she had an accidental death and dismemberment insurance policy with AIG Life Insurance Company, which her employer, MultiCare Health System, administered. The policy provided compensation for the loss of a hand, specifying that " '[l]oss' of a hand or foot means complete severance through or above the wrist or ankle joint." Clerk's Papers (CP) at 49.

If the policy is excluded from ERISA by its "safe harbor" provisions, ERISA does not apply and Washington law controls. According to Verdon, Washington law would allow her claim because she has a complete loss of functional use of her hand. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). If, on the other hand, ERISA applies, AIG contends that only a total physical severance of the hand is compensable. The trial court ruled that the AIG plan was exempt from ERISA, that ERISA therefore did not preempt Verdon's state law claims, that AIG's policy provided coverage for Verdon's injury, that Verdon was entitled to $250,000 plus interest, and that Verdon was entitled to attorney fees. AIG appeals.

## ANALYSIS

■■ We review summary judgment decisions de novo. *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 434-35, 13 P.3d 622 (2000), *cert. denied*, 532 U.S. 1002 (2001). In doing so, we view the facts in the light most favorable to the nonmoving party, AIG. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

### I. ERISA and the Safe Harbor Provision

■■ Congress enacted ERISA to protect people who participate in employee benefit plans by applying a uniform federal regulatory scheme to all claims covered by employee benefit plans. *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1132 (1st Cir. 1995). ERISA covers an employee welfare benefit plan or program that is "established or maintained" by the employer. *Johnson*, 63 F.3d at 1132. A Department of Labor regulation explains that an employer "may be involved with an employee welfare benefit program without being deemed to have 'established or maintained' it." *Johnson*, 63 F.3d at 1133.

This "safe harbor" regulation specifically states that:

[T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation the [sic] program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). The parties agree that AIG's plan satisfies the first, second, and fourth requirements. But they dispute the third requirement, whether MultiCare endorsed the plan to its employees.

■ ■ An employer endorses a plan or program if "an objectively reasonable employee would conclude on the basis of the employer's actions that the employer [has] not merely facilitated the program's availability but [has] exercised control over it or made it appear to be part and parcel of the company's own benefit package." *Johnson*, 63 F.3d at 1135. The employee's viewpoint is the "principal frame of reference in determining whether endorsement occurred." *Johnson*, 63 F.3d at 1134.

In *Johnson*, the insurer drafted the policy, set the premium rates, and prepared and printed the sales brochure and enrollment cards. The employer distributed the brochures and enrollment cards and recommended enrollment in a cover letter. This letter was on the employer's letter-

head and signed by its vice-president, but it explicitly told employees that the decision whether to enroll was up to them. *Johnson*, 63 F.3d at 1136. The employer collected premiums through payroll deductions, sent the insurer the premiums, kept a list of insureds, filled out the employer portion of the claim form, provided claim forms to employees, and kept track of employee eligibility. *Johnson*, 63 F.3d at 1136. The court upheld the trial court's determination that the plan fell within the safe harbor provisions and was exempt from ERISA.

The Fifth Circuit considered the endorsement issue in *Hansen v. Continental Insurance Co.*, 940 F.2d 971 (5th Cir. 1991). There, the employer gave its employees a booklet called "Group Accident Insurance Plan for the employees of Fairfield Industries," on which the employer's logo was printed. *Hansen*, 940 F.2d at 974. The booklet said it "explain[ed] our plan of Group Accident Insurance," and it asked employees to give the program "careful consideration." *Hansen*, 940 F.2d at 974 (emphasis omitted). A full-time benefits administrator accepted claim forms and submitted them to the insurer. *Hansen*, 940 F.2d at 974. The court found, based on the booklet's encouragement to consider the program and the employment of a full-time employee benefits administrator, that the employer did more than merely allow the insurer to publicize the program and to collect premiums. *Hansen*, 940 F.2d at 977. Because the employer endorsed the program, the safe harbor provisions did not apply but ERISA did.

The *Johnson* court distinguished *Hansen*, finding two differences crucial. First, in *Hansen*, the corporate logo was embossed on the plan booklet "making it appear that the employer vouched for the entire brochure (and for the plan)." *Johnson*, 63 F.3d at 1137. Second, the booklet described the policy as "our plan," while in *Johnson*, "the letter [from the employer] typeset onto the booklet describes the policy as a plan offered by another organization." *Johnson*, 63 F.3d at 1137. The difference between saying "our plan" and "a plan" illustrated the "quintessential meaning of endorsement." *Johnson*, 63 F.3d at 1137.

More important than these two distinctions, however, is that in *Johnson*, the case had gone to trial, and the question for the appellate court was whether the trial court "clearly err[ed]" or whether its factual determination that the program fell within the safe harbor regulation was "sustainable." *Johnson*, 63 F.3d at 1138. In contrast, *Hansen* reviewed, as do we, a summary judgment decision, and that review is de novo. *Trig Elec.*, 142 Wn.2d at 434-35. Where there is such a fine line between factual scenarios that are and are not exempt from ERISA, this difference in standard of review is critical.

The Sixth Circuit discussed the tension between *Johnson* and *Hansen* in *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 435-36 (6th Cir. 1996). Using the employee's reasonable perception test, the court held that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Thompson*, 95 F.3d at 436. Although the insurance policy included a letter encouraging employees to join, the letter was not printed on the employer's letterhead and did not refer to the policy as the employer's plan. And while the employer's name appeared on the cover of the policy description, this could have served only to identify the employer, not to endorse the plan. And the policy did not mention ERISA. But it was unclear whether the employer administered the plan, helped negotiate the terms, or participated in processing claims. *Thompson*, 95 F.3d at 436-37. Thus, a question of material fact existed as to whether the employer endorsed the plan and summary judgment was inappropriate. *Thompson*, 95 F.3d at 437.

In *Kanne v. Connecticut General Life Insurance Co.*, 867 F.2d 489 (9th Cir. 1988), the court held that the group insurance plan was an ERISA plan. There, a brochure described the plan as an ERISA plan, the employer group was described as the plan's administrator, and the plan was established as a trust entity. *Kanne*, 867 F.2d at 491. These

facts showed the employer group's intent to create an ERISA plan. *Kanne*, 867 F.2d at 493. And in *Pacificare, Inc. v. Martin*, 34 F.3d 834 (9th Cir. 1994), the court found that the employer endorsed the plan by having the insurer file ERISA forms with the government about the plan. But the employer also made contributions, which satisfied another of the safe harbor provisions. *Pacificare*, 34 F.3d at 837.

In *Zavora v. Paul Revere Life Insurance Co.*, 145 F.3d 1118 (9th Cir. 1998), the court held that an issue of fact existed as to whether the insurance policy was part of an ERISA plan. The insurer's plan description identified the plan as an ERISA plan and designated the employer as the plan administrator, plan sponsor, and agent for service of process. *Zavora*, 145 F.3d at 1121. But the plan summary, which the insurer prepared, bore the insurer's name in large print, reserved for the insurer the discretion to determine eligibility for benefits, and stated that the employer was its agent for limited purposes. *Zavora*, 145 F.3d at 1121-22. A reasonable person could find that the employer was no more than a conduit for the insurer; "[t]he evidence as a whole permits, even [if] it does not compel, a determination that [the employer] did not establish or maintain an ERISA plan." *Zavora*, 145 F.3d at 1122. Thus, summary judgment was not appropriate.

Here, AIG points to two documents in particular that it claims show that MultiCare endorsed the AIG plan: the plan description and Verdon's enrollment form. The heading on the plan description is "MultiCare Health System Summary Of The AIG Life Insurance Company Voluntary Personal Accident Insurance Plan." CP at 87. This document discusses "the need for accident insurance," listing accident statistics and the financial results for families. CP at 87. The enrollment form lists the various insurance options the employee may choose, including medical, dental, life, and accidental death and dismemberment. The employee signs the document stating her "understand[ing] that I have made an election for my benefits package for the plan year." CP at 116. MultiCare's name and logo appear at the bottom of the form; AIG's name is not on the form.

These two documents alone could lead a reasonable employee to believe that MultiCare endorsed the AIG plan. In addition, two MultiCare benefits managers testified that MultiCare provides employee information to AIG to help them process their claims. And employees contact MultiCare, the plan administrator, if they have questions about the AIG plan. Moreover, MultiCare considers the AIG accidental death and dismemberment insurance part of its ERISA plan.

Like *Zavora*, the evidence here "permits, even [if] it does not compel," a finding that MultiCare endorsed the AIG plan. *Zavora*, 145 F.3d at 1122. Thus, issues of material fact exist that preclude summary judgment. As *Johnson* explains,

[i]n some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement becomes a matter of law. In other cases, the legal significance of the facts is less certain, and the outcome will depend on the inferences that the factfinder chooses to draw. In those cases, endorsement becomes a question of fact.

*Johnson*, 63 F.3d at 1135 n.3 (citations omitted). In *Johnson*, the case had already been tried; but *Thompson*, citing *Johnson*, found a question of fact and accordingly found summary judgment inappropriate. We reach the same conclusion here.

## II. Attorney Fees

Verdon asks us to uphold the trial court's award of attorney fees, and she requests attorney fees on appeal. Because we vacate the summary judgment order and remand for trial, we also vacate the trial court's award of attorney fees. Verdon may seek attorney fees at the conclusion of the trial on remand.

RAP 18.1 permits us to award attorney fees if the law grants the party the right to such fees. RAP 18.1(a). But we need not determine whether the law grants Verdon the

right to fees here because she is not the prevailing party on appeal. We deny her request for attorney fees on appeal.

We vacate the summary judgment decision and attorney fee award and remand for trial.

MORGAN and SEINFELD, JJ., concur.