# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RONALD W. ERICKSON,<br><br>Appellant,<br><br>v.<br><br>PORT OF PORT ANGELES; CITY OF PORT ANGELES; NIPPON PAPER IND. USA,<br><br>Respondents,<br><br>WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; WASHINGTON STATE DEPARTMENT OF ECOLOGY; CLALLAM COUNTY, LOWER ELWHA KLALLAM TRIBE; PUGET SOUND MILLS & TIMBER COMPANY STOCKHOLDERS; RIDDELL, WILLIAMS P.S.; OLYMPIC PENINSULA TITLE CO.; ZENOVIC & ASSOCIATES, INC; THE UNITED STATES DEPARTMENT OF INTERIOR; and CLYDE H. BODDY,<br><br>Defendants. | No. 49951-7-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — Ronald Westley Erickson appeals a superior court order granting summary judgment in favor of the City of Port Angeles, the Port of Port Angeles, and Nippon Paper Industries, USA (Nippon) and dismissing Erickson's claims. Erickson argues that the superior court erred in: (1) granting the City's motion for summary judgment; (2) granting the Port and Nippon's motion for summary judgment; (3) dismissing his other claims against the defendants;

(4) granting the City's request for attorney fees; (5) requiring him to provide a more definite statement as to the nature of his claims; (6) failing to provide him appointed counsel in violation of his due process rights; and (7) denying his motion for reconsideration.  We affirm.

FACTS

A.    THE PROPERTY

On December 5, 1997, Erickson purchased a 140 square foot triangular parcel of land at a Clallam County tax foreclosure sale.  This triangular piece of property is located at the corner of K Street and Marine Drive[1] in the City of Port Angeles.  The property occupies the southwest corner of an area known as the Sampson Donation Land Claim.

After purchasing the parcel, Erickson discovered that his property was formerly a right of way for the Chicago, Milwaukee, St. Paul & Pacific Railroad (Railroad).  The Railroad obtained the right of way in 1919, when the Puget Sound Mill & Timber Co. granted the Railroad a fee simple determinable.  According to Erickson, the granting deed contained a reversion clause, which stated:

> Said property of the second part [railroad], its successors or assigns to have and to hold said property for a right-of-way and if said Party of the Second Part should abandon said property or put the same to any other use except the purpose for which the same is herein conveyed [railroad purposes], the title thereto and all rights and appurtenances thereunto belonging shall immediately revert in said First Party [PSM&T].

---

[1] Marine Drive was formerly named Third Street.

2

Clerk's Papers (CP) at 332.[2] Erickson's research unearthed the ownership history of the property and city streets abutting his 140 square foot parcel, including information about the Sampson Donation Land Claim, Marine Drive, and K Street—all of which border one side of Erickson's triangular property.

1.    Sampson Donation Land Claim

Erickson's parcel is situated in the southwest corner of tract F of the Sampson Donation Land Claim. By 1945, Clallam County had acquired several "tracts, pieces and parcels of land" in and around the Sampson Donation Land Claim through a series of tax lien foreclosures. CP at 257. The County decided that this real estate would aid in industrial development and approved a resolution conveying the property to the Port of Port Angeles. The 1945 conveying deed specifically exempted the 140 square foot railroad right of way that would later become Erickson's parcel.

2.    Marine Drive

Marine Drive borders the southwestern portion of Erickson's property. In 1913, the City of Port Angeles acquired a 70 foot strip of land running along the southwestern portion of the Sampson Donation Land Claim. The Puget Sound Mill & Timber Co. deeded this strip of land to the City, "its successors and assigned forever" for the express purpose of establishing a public street. CP at 593. The granting deed stated, "upon a failure upon the part of said city of Port Angeles to improve the land herein granted for highway purposes, or upon the failure of such use said lands shall revert to the grantor herein." CP at 593.

---

[2] The Puget Sound Mill & Timber Co. dissolved in 1925. The Railroad abandoned its line on the Olympic Peninsula in 1980.

3. K Street

K Street borders the northwestern side of Erickson's property. In 1989, the City vacated its right of way to the portion of K Street north of Marine Drive. As a result, 13 feet of the vacated portion K Street presently abuts Erickson's parcel. In vacating K Street, the City quit claimed one half of the vacated portion of K Street to the Port, and the other half of the vacated portion of K Street to Daishowa America Co., Ltd. Daishowa later became incorporated as Nippon Paper Industries, USA (Nippon).

B. ERICKSON'S LAWSUIT

1. The Complaint

In May 2014, Erickson brought suit against the City, the Port, and Nippon.[3] His complaint sought declaratory relief "in regard to Railroad Property" and the taking of private property for public use. CP at 1150 (emphasis omitted).

In June 2015, Erickson filed a 62 page amended complaint for: (1) property line designation; (2) quiet titles; (3) water rights; (4) trespasses; (5) injunctive relief; (6) declaratory relief for (a) frauds, (b) franchises, (c) legal costs, (d) statutes of limitation, (e) public transportation corridors, (f) shifting public use doctrine, (g) Torrens registrations, (h) rewards, (i) arbitrary and capricious actions, (j) "Federal Right to Lands, etc."; and (7) damages. CP at 1073.

---

[3] Erickson also named in both his complaints, the Washington State Department of Transportation, Clallam County, the Lower Elwha Klallam Tribe, the Olympic Peninsula Title Co, Zenovic & Associates, Riddell Williams P.S., the Puget Sound Mills & Timber Company, and Clyde H. Boddy, the former Executive Director of the Port. These defendants were later dismissed from the lawsuit by stipulated motion. In his amended complaint, Erickson also named the Washington State Department of Ecology and the United States Department of Interior as defendants. These defendants are not parties to this appeal.

2.      Request for Accommodations under GR 33

Erickson suffers from short term memory challenges, audio delay recognition, anxiety, suggestibility, and mood swings.  In May 2015, Erickson requested disability accommodation pursuant to GR 33.[4]

Pursuant to GR 33, Erickson asked the superior court to appoint a trial attorney to represent him in his lawsuit.  In the alternative, Erickson requested a litigation guardian to assist in the courtroom.

The superior court granted Erickson's accommodation request and ordered "that a litigation guardian shall be appointed for Mr. Erickson to handle this litigation on his behalf."  CP at 19. The order further instructed the litigation guardian to "review the pleadings in this matter and conduct all research necessary to make a determination whether any of Mr. Erickson's claims have merit [and/or] whether it is in his best interests to proceed with the lawsuit."  CP at 19.

3.      Order Dismissing Claims

On October 23, Lawrence E. Freedman, the attorney appointed to serve as Erickson's litigation guardian, filed an amended report with the superior court.  Freedman reported that only Erickson's boundary line and quiet title claims had potential merit.  Erickson disagreed, and on March 15, 2016, sent Freedman a letter voicing his frustration with Freedman's conclusions.

---

[4] GR 33 governs requests for accommodation by persons with disabilities and provides "measures to make each court service, program, or activity, when viewed in its entirety, readily accessible to and usable by a person with a disability."  GR 33(a)(1).  This includes, "as to otherwise unrepresented parties to the proceedings, representation by counsel, as appropriate or necessary to making each service, program, or activity . . . readily accessible to and usable by a person with a disability."  GR 33(a)(1)(C).

On March 25, the Port, the City, and Nippon, filed a motion to dismiss Erickson's claims "consistent with the Litigation Guardian's amended report." CP at 973. The defendants argued that "it would not be practical or fair for the defendants to go through and disprove the frivolously long list of claims, or even be put to the task of identifying the elements of each claim" in light of Freedman's report. CP at 973.

Erickson filed a response, in which he claimed that he had "not received legal counsel from the court representing [his] concerns on this matter." CP at 907. In his supporting declaration, Erickson claimed that a 2003 preliminary short plat map on file with the City failed to properly identify his property.

The superior court heard oral argument on the motion to dismiss on April 22. At the motion hearing, Erickson renewed his request for a court appointed attorney under GR 33. The superior court orally ruled that it was not going to appoint a civil attorney to represent Erickson because it did not believe there was a legal basis for such request.

Erickson then stated that he had "looked at the facts and [was] willing to excuse maybe five or six different actions." Verbatim Report of Proceedings (VRP) (Apr. 22, 2016) at 12. Erickson stated that he would be willing to dismiss:

> [A]ctivation of the city's 2004 vacation of K Street, activating the reversion of Marine Drive to [him], plaintiff, injunction relief on the utility trespass of Nippon on Clallam County property in the far corner, injunction relief in regards to Marine Drive, mishandling of the plaintiff's tort registration by Clallam County.

VRP (Apr. 22, 2016) at 13.

He then argued that the remaining claims should include his (1) utility trespass claim against the Port and (2) "improper identification in an easement right given to the city." VRP

(Apr. 22, 2016) at 13-14. Erickson conceded that he did not yet understand the aspects of his fraud claim and still needed to research whether the City may lawfully vacate streets inside the "Port Angeles municipal zone." VRP (Apr. 22, 2016) at 14.

The superior court granted the motion to dismiss all of Erickson's claims with prejudice, except the property line and quiet title actions. Erickson sought discretionary review of the superior court's order of dismissal, which this court denied.

C.      MOTIONS FOR SUMMARY JUDGEMENT ON REMAINING CLAIMS

        1.      Motion for More Definitive Statement

Following the superior court's order of dismissal, the Port and Nippon filed a motion for a more definite statement as to Erickson's remaining claims under CR 12(e).[5] Finding that Erickson's complaint was "so voluminous and confusing as to be unintelligible," the superior court granted the motion. CP at 30. The superior court ordered Erickson to clearly identify the real property line adjustments, quiet titles issues, and legal theories on which he based his claim.

Erickson filed a more definite statement on June 13. Erickson identified his quiet title issues as: (1) quieting title to the property he acquired in the 1997 tax foreclosure deed against the Port, (2) quieting title to a portion of Marine Drive against Nippon,[6] and (3) quieting title to half of the portion of K Street vacated in 1989 against the Port and Nippon. As to his property line

---

[5] Under CR 12(e), "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, or if more particularity in that pleading will further the efficient economical disposition of the action, the party may move for a more definite statement before interposing a responsive pleading."

[6] Even though Marine Drive borders the southwestern portion of Erickson's land, he referred to this quiet title action as a "westerly boundary line extension." CP at 487. According to Erickson, this portion of Marine Drive was within a Nippon boundary line survey.

claims, Erickson sought (1) expansion of his southern property line to include the portion of Marine Drive abutting Tracts D, E, and F of the Sampson Donation Land Claim and (2) extension of the northern and western boundary of his property to include the vacated portions of K Street under Erickson's "reversion rights to [Sampson Donation Land Claim] lands." CP at 491. Erickson admitted that the issue of his reversion rights to K Street was "tricky" and opined that it would be easier for the superior court to undo the 1989 street vacation of K Street. CP at 491.

2.      The City's Motion for Summary Judgment

On May 2, Erickson sent 60 interrogatories to the City. Some of these interrogatories required the City to answer questions regarding land not subject to Erickson's lawsuit and to provide legal analysis as to how someone could extinguish the City's claimed property rights.

In response, the City emailed Erickson and informed him that his interrogatories amounted to an abuse of process. The City stated that it asserted no interest in the remaining disputed property identified in Erickson's lawsuit and, therefore, was not a proper party to the dispute. The City informed Erickson that it would be requesting sanctions if he failed to dismiss the City from his lawsuit. Erickson never dismissed the City from his lawsuit.

On May 17, the City filed a motion for summary judgment, seeking dismissal of Erickson's claims against the City. The City argued that it had abandoned any interest in K Street in 1989 when it vacated its right of way.

As to Marine Drive, the City acknowledged that it does hold a right of way. However, the City attached a copy of the GR 33 accommodation request Erickson sent in April, in which Erickson informed the court that he had "reversed [his] perception of the facts supporting [his]

8

opinion that The City activated the reversion clause on PSM&T's dedication deed for Marine Drive." CP at 790.

The City argued that it should be dismissed from Erickson's suit because the City did not claim any interest to the property remaining at issue in the case. In support, the City relied on the plain language of RCW 7.28.010, which governs quiet title actions, and allows someone to bring a quiet title action "against the person claiming the title or some interest therein."

The City also requested an award of partial fees under CR 11[7] and RCW 4.84.185.[8] In support, the City attached a copy of the interrogatories Erickson sent, as well as the email exchange putting Erickson on notice that his interrogatories constituted an abuse of process.

Erickson filed a response in opposition to summary judgment. Erickson argued that there still remained genuine issue as to material fact regarding the City's claimed interest because: (1) the City failed to vacate Marine Drive when it first named the street Third Street North, (2) a portion of K Street should have reverted to Erickson in 2004, (3) "[a] now modified reversion of Marine Drive to [Erickson] not in 2004 but about 1917 for noncompliance with dedicator's

---

[7] CR 11 governs the signing and drafting of pleadings and motions in superior court. Under CR 11(a), the signature of a party on a pleading constitutes a certificate that to the best of the party or attorney's knowledge, it is (1) well-grounded in fact; (2) warranted by existing law; (3) not interposed for an improper purpose, such as to harass, increase the cost of litigation, or cause unnecessary delay; and "(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." If a party signs a pleading, motion, or legal memorandum in violation of CR 11, the court may impose appropriate sanctions, which may include ordering the offending party to pay reasonable expenses incurred, including attorney fees. CR 11(a).

[8] Under RCW 4.84.185, upon the finding that the action was frivolous and advanced without reasonable cause, the court may require the nonprevailing party to pay the prevailing party reasonable expenses, including the attorney fees incurred in opposing the claim.

manifest objective," (4) the nature of the City's "procurement of road use" within K Street was unknown, and (5) Erickson had standing to make a claim to K Street. CP at 630.

As to Marine Drive, Erickson argued that the City could not properly rely on his statement disavowing interest in Marine Drive "without permission of the court justice" under GR 33(2)(b).[9] CP at 631. Erickson also cited to GR 33(f)[10] to argue that statements made in requesting accommodation under GR 33 are "not admissible as limiting plaintiff's rights." CP at 631. Erickson further argued that the City had clouded ownership to his lands by enacting a 1913 ordinance establishing Third Street (present day Marine Drive), but "not vacating such by name." CP at 634.

Erickson appeared to argue that there remained genuine issues of material fact as to whether the City retained an interest in K Street and whether Erickson had a right to claim interest in adjoining K Street lands. At the motion hearing, Erickson also asked the superior court to take judicial notice of the fact that the City never recorded its 1989 vacation with the county auditor's office, as required by RCW 35.79.030.[11]

---

[9] There is no GR 33(2)(b). GR 33(b)(2) requires requests for disability accommodation be made in advance in order to allow the court to better address the needs of the individual.

[10] There is no subsection (f) under GR 33.

[11] Under RCW 35.79.030, "A certified copy of such ordinance shall be recorded by the clerk of the legislative authority and in the office of the auditor of the county in which the vacated land is located."

On June 17, the superior court granted the City's summary judgment motion and dismissed the City from Erickson's lawsuit. The superior court also awarded the City $1,500 in attorney fees under CR 11 and RCW 4.84.185.

3.      The Port and Nippon's Motion for Summary Judgment

On August 12, the Port and Nippon filed a motion for summary judgment seeking to dismiss all of Erickson's remaining claims. The Port and Nippon argued that Erickson's more definite statement regarding his claims failed to clarify his legal claims. Nevertheless, the Port and Nippon addressed what claims it believed Erickson asserted against them.

In their motion, the Port and Nippon explained that neither party disputed that Erickson owned the 140 square foot parcel he acquired in the 1997 Clallam County tax foreclosure sale. But as to Erickson's grievances regarding a short plat created at the Port's request in 2003, the Port and Nippon argued that omission of Erickson's property in the short plat map was not a claim to ownership of his property. Like the City, the Port and Nippon relied on the plain language of RCW 7.28 to argue that quiet title was inappropriate because neither party claimed " 'title or some interest therein' " to Erickson's parcel. CP at 375 (quoting RCW 7.28.010).

The Port and Nippon also argued that Erickson's claim to reversion rights to Marine Drive should be dismissed because Erickson characterized this claim as a quiet title action " 'dependent upon other issues proving plaintiff's reversion rights to Marine Drive.' " CP at 376. Nippon argued that Erickson did not have standing to challenge a boundary survey prepared at the request of a third party nor could Erickson require Nippon to take action and correct a mistake in the survey.

11

The Port and Nippon then addressed Erickson's claim to the 1989 vacated portion of K Street based on the "manifest objective" of a 1913 railroad deed, citing to *Carlson v. Stair*, 3 Wn. App. 27, 30, 472 P.2d 598 (1970), which held that " '[a] tax deed extends only to the real property over which the court in the foreclosure proceeding has obtained jurisdiction.' " CP at 378. The Port and Nippon argued that even if Erickson's parcel at one time carried a revisionary right, such right did not pass to Erickson through his 1997 tax deed.

In response, Erickson filed 27 attachments, which included hand drawn maps depicting his desired property line extension through Marine Drive and K Street. Erickson argued that the Port asserted an ownership interest in his 140 square foot parcel when it signed the 2003 purchase and use agreement between the Port and the State, which erroneously included his 140 square foot parcel as Port-owned lands. However, Erickson conceded that the DOT fixed this mistake and later updated the agreement to exclude Erickson's parcel from its description of Port-owned land. Relying on the right of way easement granting the City the right to build and operate utility pole lines, Erickson asserted that the City's utility easement traversed his property. Erickson also argued that Nippon and the Port owned "invalid deeds" through the 1989 street vacation because the City's quit claim deeds were "meaningless." CP at 227. Erickson also contended that as an adjoining property owner, he held fee title to K Street.

On September 23, the superior court granted the Port and Nippon's motion for summary judgment. The order dismissed all of Erickson's remaining claims against the Port and Nippon.

4.      Renewed GR 33 Request

Prior to oral argument on the Port and Nippon's motion for summary judgment, Erickson again requested accommodation under GR 33. The superior court denied Erickson's request for

an attorney at public expense. However, the superior court granted the alternative relief that it would consider any reasonable requests of Erickson in future proceedings to make oral presentations clearer.

D.     MOTION FOR RECONSIDERATION

On October 3, Erickson filed a motion for reconsideration under CR 59[12] of the superior court's order granting summary judgment. Erickson's motion did not specify which order granting summary judgment he sought reconsideration.

Erickson claimed an irregularity in the proceeding because "[n]ear the beginning of the hearing [Port's counsel] made comment to [the presiding judge] concerning his objections to some kind of information or evidence before the court." CP at 180. Erickson further asserted he was never served a copy of that objection. Erickson also claimed surprise in learning that the Port did not claim interest in Marine Drive and stated that he could not have known this fact prior to filing his complaint.

Erickson further argued that reconsideration was warranted because the order was contrary to law under CR 59(a)(7). CP at 183. Specifically, Erickson argued that RCW 4.28.010 specifically allows a quiet title action against the tenant in possession.[13] According to Erickson,

---

[12] Under CR 59, an aggrieved party can motion the superior court for reconsideration on the basis of: (1) irregularity in the court proceedings, (2) misconduct of the prevailing party, (3) accident or surprise, (4) newly discovered evidence, (5) excessive damages, (6) error in the assessment of the amount of recovery, (7) no evidence or reasonable inference from the evidence to justify the decision, (8) error in law occurring at the trial, and (9) that substantial justice has not been done.

[13] Erickson relies on RCW 4.28.010 as the basis for his quiet title action; however, the correct statute is RCW 7.28.010.

the Port was a tenant in possession based on a final 2004 plat map, which erroneously included Erickson's 140 square foot parcel as part of Port property.

The superior court denied Erickson's motion for reconsideration. Erickson appeals.

ANALYSIS

A.    ORDERS GRANTING SUMMARY JUDGMENT

Erickson assigns error to the superior court order granting summary judgment in favor of the City, as well as the superior court order granting summary judgment in favor of the Port and Nippon. Erickson appears to direct the same legal arguments at both orders granting summary judgment. However, Erickson fails to explain how any of the legal arguments he presents relate to his disputes with the individual respondents he named in his lawsuit. Erickson also fails to explain how the legal arguments he presents show a genuine issue of material fact precluding summary judgment.[14]

Nonetheless, because Erickson does assign error to both superior court orders granting summary judgment, we consider each in turn. In doing so, we hold that the superior court did not err in granting either the City or the Port and Nippon's motions for summary judgment.

1.    Legal Principles

We review the grant of summary judgment de novo. *Verdon v. AIG Life Ins. Co.*, 118 Wn. App. 449, 452, 76 P.3d 283 (2003). Thus, we engage in the same inquiry as the superior court. *Landstar Inway Inc. v. Samrow*, 181 Wn. App. 109, 120, 325 P.3d 327 (2014). However, we may

---

[14] In his briefing, Erickson's sole reference to a genuine issue of material fact lies in one of the 16 issues he presents. However, this argument is limited, as Erickson merely claims that his "reversion right" and "lot size" constitute genuine issue of material fact. Br. of Appellant at 30.

affirm the superior court's grant of summary judgment "on any basis supported by the record." *Bavand v. OneWest Bank*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Winston v. State Dep't of Corr.*, 130 Wn. App. 61, 63-64, 121 P.3d 1201 (2005). Sitting in the same position as the superior court, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Landstar Inway, Inc.*, 181 Wn. App. at 120. We will uphold a grant of summary judgment if, from all the evidence, reasonable minds could reach but one conclusion. *Cho v. City of Seattle*, 185 Wn. App. 10, 15, 341 P.3d 309 (2014), *review denied* 183 Wn.2d 1007 (2015).

The party moving for summary judgment bears the initial burden of demonstrating an absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this burden, then the inquiry shifts to the party opposing summary judgment, who must then demonstrate the existence of a genuine issue of material fact. *Id.* "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate if the opposing party fails to meet its burden and make the requisite showing of a genuine issue of material fact. *Young*, 112 Wn.2d at 225.

2.      The City's Motion for Summary Judgment

Erickson appears to argue that a genuine issue of material fact remained as to whether the City asserted an interest in the portion of the streets Erickson sought to quiet title. We disagree.

Erickson's remaining claims at summary judgment were for quiet title and related boundary line adjustment. RCW 7.28.010, which governs quiet title actions, provides that

[a]ny person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein.

We first look to the plain language of a statute in ascertaining its meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "If the plain language of the statute is unambiguous, then this court's inquiry is at an end." *Id.*

The plain language of RCW 7.28.010 limits quiet title actions to be brought against either a tenant in possession or against a person claiming title or some interest in the property at issue. Therefore, in order for Erickson to bring a quiet title action against the City, the City must claim title or an interest in the property for which Erickson sought title. RCW 7.28.010.

In moving for summary judgment, the City presented evidence that it did not assert any claim to Erickson's 140 square foot parcel or the abutting K Street. As to Marine Drive, the City provided evidence that Erickson had abandoned his claim that the City had activated Erickson's "reversion rights" to the street. CP at 845. Therefore, the City met its initial burden of showing an absence of a genuine issue of material fact as to Erickson's quiet title claims against the City. *Young*, 112 Wn.2d at 225.

The burden then shifted to Erickson to demonstrate the existence of a genuine issue of material fact. *Id.* In opposition to summary judgment, Erickson submitted a number of documents, including a copy of the ordinance in which the City vacated its right of way to K Street. Erickson argues that the City's 1989 deed to the Port and Nippon "are a hostile cloud on Erickson's acquired

vested rights." Br. of Appellant at 28-29. However, Erickson fails to explain how the City asserted a right to K Street by executing a deed in which the City specifically relinquished its right to K Street. Erickson also fails to address City's evidence showing that Erickson disavowed his interest in Marine Drive.[15] Therefore, Erickson fails to meet his burden showing that the City asserted any interest in the land Erickson sought to quiet title.

Erickson further argues that he had "a lawful right" to sue the City based on RCW 4.16.020(1). Br. of Appellant at 26. RCW 4.16.020(1) provides:

> For actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his or her ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action.

Erickson appears to argue that RCW 4.16.020(1) allows him to assert "reversion rights" of those who previously owned his property. Br. of Appellant at 30. However, he fails to provide citation to any legal authority allowing him to challenge a City street vacation that occurred approximately 10 years before he purchased his parcel of land. "Where no authorities are cited in

---

[15] Even if Erickson could show that he never relinquished his claim to Marine Drive, he still fails to show that he could lawfully bring a quiet title claim for any portion of Marine Drive. Erickson's entire quiet title claim to portions of K Street and Marine depended on his theory that he held "reversion rights" and "vested rights" based on a reversion clause in the 1919 deed creating a Railroad right of way over his property. Br. of Appellant at 28, 30.

However, at a tax foreclosure sale, "the successful bidder acquires title in fee as against the owner, but the taxing body does not warrant title to the land sold and is not responsible for defects therein." *Carlson*, 3 Wn. App. at 30. Further, "A tax deed extends only to the real property over which the court in the foreclosure proceeding has obtained jurisdiction." *Id.* (rejecting a husband and wife's claim that they could rely on a 1906 plat map to quiet title to land surrounding a property acquired through a tax foreclosure sale). Thus, Erickson could not extend his property line and quiet title to the surrounding streets based on the "reversionary rights" of previous grantees because he had only acquired the rights to his 140 square foot parcel at the tax foreclosure sale.

support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Further, Erickson fails to explain how RCW 4.16.020(1) allows him to bring a quiet title action against a party who does not assert any interest in the property he seeks to quiet title. Because Erickson's claim to quiet title against the City depended on the City actually asserting an interest in the land he sought to quiet title, summary judgment was appropriate here. We affirm the grant of summary judgment dismissing Erickson's claims against the City.

3.     The Port and Nippon's Motion for Summary Judgment

Erickson appears to argue that the superior court erred in granting the Port and Nippon's motion for summary judgment because: (1) the Port asserted an interest in Erickson's property when it relied on an inaccurate 2003 plat survey, and (2) Erickson had "vested rights" and "reversion rights" to the vacated portions of K Street. Br. of Appellant at 29-30. We disagree.

Erickson's claims against the Port and Nippon are based on his claimed "reversionary rights" of the prior owners of his 140 square foot parcel. CP at 487. Specifically, Erickson believed that, based on a reversionary clause in the 1919 deed in which Puget Sound Mill & Timber Co. granted the Railroad the right of way, the Railroad right of way over his property reverted back to the grantor (Puget Sound Mill & Timber Co.) when the Railroad abandoned its line in 1980. Therefore, as an abutting owner of K Street, he should have been granted fee title to a portion of the vacated street.

Erickson also believed that the Port asserted title to his 140 square foot parcel of land when it approved a purchase and use agreement in 2003, which failed to accurately identify Erickson's property. Thus, Erickson sought to quiet title to his 140 square foot parcel against the Port.

The Port did not dispute the 2003 short plat error. However, the Port argued that it never asserted a claim to Erickson's property by approving a short plat map, which erroneously identified Erickson's property in its description of Port-owned property. Relying on the plain language of RCW 7.28, the Port argued that it could not be named in Erickson's quiet title action because it was not actually asserting title or interest in Erickson's parcel. Therefore, as the moving party, the Port met its initial burden of showing an absence of material fact as to this quiet title claim. *Young*, 112 Wn.2d at 225.

Erickson fails to explain how evidence that the Port approved a survey map containing this error, which was later fixed, showed that the Port asserted title to his property. He, therefore, fails to show that there remained a genuine issue as to any material fact regarding his quiet title claim against the Port to his 140 square foot parcel. Summary judgment in favor of the Port was proper.

As to Erickson's quiet title claims to K Street and Marine Drive, the Port and Nippon did not dispute that the 1919 granting deed contained a reversionary clause. But the Port and Nippon cited to the legal authority discussed above, which held that " '[a] tax deed extends only to the real property over which the court in the foreclosure proceeding has obtained jurisdiction.' " CP at 378 (quoting *Carlson v. Stair*, 3 Wn. App. 30). Therefore, the Port and Nippon met their initial burden of showing an absence of genuine issue as to any material fact, and that they were entitled to judgment as a matter of law.

19

Once the burden shifted to Erickson, he provided a number of documents, none of which showed that he could assert the interests of prior owners to property he acquired at a tax foreclosure sale. And Erickson fails to provide citation to relevant legal authority showing that his "fee title reversion rights" allowed him to assert prior owners' interests to K Street and Marine Drive. Br. of Appellant at 26. Because this is the linchpin of Erickson's claims to quiet title on portions of K Street and Marine Drive, his argument on this basis fails. Therefore, summary judgment was proper as to these "reversionary rights" claims. We affirm the superior court's grant of summary judgment in favor of the Port and Nippon.

4.      Issues Never Called to the Attention of the Superior Court

Erickson raises several issues on appeal that were never called to the attention of the superior court on summary judgment. Specifically, Erickson argues: (1) the 1989 deed granting fee title in K Street to the Port and Nippon was "ambiguous and lawfully inadequate," (2) the City failed to record its street vacation with the county auditor, (3) adjoining street owners within a plat own fee in the adjacent streets, and (4) street vacations must comply with RCW 58.17.212. Br. of Appellant at 15. We decline to address these issues raised for the first time on appeal.

a.      Legal principles

"On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. Even though our review is de novo, a party may not raise an argument that was neither pleaded nor argued to the superior court for the first time on appeal. *Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008), *review denied* 165 Wn.2d 1017 (2009).

b.      Ambiguity in the 1989 deed

Erickson argues that the 1989 deed granting fee title in the vacated portion of K Street to the Port and Nippon was "ambiguous and lawfully inadequate." Br. of Appellant at 15. Thus, he contends that the deed never transferred title to the Port and Nippon, and as a result, the City still holds fee title to the property.

Erickson claims that this issue was called to the attention of the trial court because he cited to RCW 64.04.050, which governs the substance and forms of quitclaim deeds. Even though Erickson did cite to RCW 64.04.050 in his more definite statement, he only cited to the statute to support his assertion that the "doctrine of quit claim deeds only transfer rights actually owned." CP at 495 (emphasis omitted). We hold that Erickson never raised a challenge to the ambiguity of the 1989 deed below, and therefore, this issue was never called to the attention of the superior court.

c.      The City's failure to record the 1989 street vacation

Erickson claims that the City failed to comply with RCW 35.79.030 because it never filed a street vacation notice with the county auditor. Erickson first raised the issue of whether the City complied with street vacation notice procedures in his motion for reconsideration. Therefore, this issue was not called to the attention of the superior court on summary judgment and may not be raised for the first time on appeal. RAP 9.12.

d.      Vacation of subdivisions under RCW 58.17.212

Erickson argues that RCW 58.17.212, which outlines vacation of subdivisions, allows subsequent fee owners to "bring a quiet title action to correct prior erroneous claims." Br. of Appellant at 19. Erickson appears to argue that this issue was before the superior court because

he referenced RCW 58.17.212 at the hearing on the City's motion for summary judgment.

However, Erickson's reference to this statute at the motion hearing was:

> I'm just saying that my property line extensions, RCW 58.7, entitle me to as a property owner, to interest in adjoining streets and [RCW] 58.17.212, actually says that if a survey, plat, survey plat, then property owners outside the plat don't have any reversion or interest in that street.

VRP (June 15, 2016) at 46.

Thus, while Erickson did argue that RCW 58.7 entitles abutting property owners to file a vacation of a subdivision, he never argued that it allows him the right to assert a prior land owner's interest to do so. Thus, this argument based on RCW 58.17.212 is not the same argument Erickson made to the superior court, and this issue was not called to the superior court's attention. Therefore, we decline to address this issue.

e. Street vacation under RCW 58.17.212

Erickson argues that street vacations within a plat may only be vacated by RCW 58.17.212, not RCW 35.79. His argument here appears to rely on the evidence that the City created Third Street (currently Marine Drive) by obtaining a right of way over a portion of the Sampson Donation Land Claim in 1913. Erickson contends that this issue was before the superior court on summary judgment because he "identified the differing prerequisites between RCW 58.17 and RCW 35.79." Br. of Appellant at 22. We disagree.

In response to the Port, the City, and Nippon's motion to dismiss all of Erickson's claims except for the quiet title and property boundary disputes, Erickson did quote the language of both RCW 58.17.212 and RCW 35.79. However, his sole argument based on this language was that a "street vacation within a plat seems to be a process different than the process the city of Port

Angeles used when vacating 'K' Street north of Marine Drive." CP at 932. He did not argue that the City could only vacate a street within a plat under RCW 58.17.212. Therefore, we decline to address this argument because it was not called to the attention of the superior court.

In sum, we hold that the superior court did not err in granting summary judgment in favor of the City and dismissing Erickson's claims against the City. We also affirm the order granting summary judgment in favor of the Port and Nippon and dismissing Erickson's claims against the Port and Nippon.

B.      ORDER OF DISMISSAL

Erickson argues that the superior court erred in dismissing with prejudice (1) his utility trespass claim against the City and (2) his claims that the County was required to correct an error to the county assessor maps.[16] We disagree.

1.      Standard of Review

From the record it is not clear under what legal basis the Port, the City, and Nippon based its motion to dismiss the majority of Erickson's claims. The parties moved for dismissal "consistent with the Litigation Guardian's amended report," which outlined which of Erickson's claims had potential merit. CP at 973. In its order of dismissal, the superior court similarly failed to identify under what legal basis it dismissed Erickson's claims.

Nonetheless, in ruling on the motion, the superior court allowed Erickson to submit evidence outside the pleadings. Specifically, the superior court did not exclude Erickson's

---

[16] The superior court dismissed a number of other claims. However, on appeal, Erickson limits his argument to these two claims.

declaration referencing the 2003 preliminary short plat map and a utility pole used by Nippon. Because the superior court allowed Erickson to submit material outside of the pleadings, the motion for dismissal is treated as a motion for summary judgment. [17] CR 12(c). We review the grant of summary judgment de novo. *Verdon*, 118 Wn. App. at 452.

> 2. The Superior Court did not Err in Dismissing Erickson's Claims

> > a. Utility line claims

Erickson argues that the superior court erred in dismissing his utility trespass claim against the City because the City's utility lines across his property constituted a taking of air space property. Erickson also argues that this easement constituted an "invalid deed" across his property. Br. of Appellant at 32.

Erickson argues that a utility line ran "northerly" over his property, but fails to support such argument with citation to relevant portions of the record. Br. of Appellant at 31. Erickson cites to the portion of a 2004 street vacation petition in which the City agreed to bury its future utility lines. However, Erickson does not provide any citation to the record showing the utility lines at issue here were constructed after 2004. Erickson also fails to provide any legal authority to support his utility trespass claim. Therefore, we decline to address these claims. RAP 10.3(a)(6).

---

[17] Under CR 12(c), a party may move for judgment on the pleadings, but "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."

b.      County assessor map of Erickson's property

Erickson appears to argue that the superior court erred in dismissing his claims related to the mapping of his territory because the county assessor had a duty to maintain updated maps. We disagree.

Erickson's argument relies on the plain language of RCW 84.40.160, which requires the county assessor to "continually update the maps [indicating parcel configurations] to reflect transfers, conveyances, acquisitions, or any other transaction or event that changes the boundaries of any parcel." RCW 84.40.160. However, Erickson cites to no legal authority holding that he can bring a claim under RCW 84.40.160 to compel the County to update its records. Erickson also appears to argue that the County's failure to remedy the error regarding his property constituted negligence. But Erickson fails to even identify the elements of negligence or explain how the County's actions meet the elements of negligence. Therefore, we hold that Erickson's claims fail.

c.      Dismissal with prejudice

Erickson asks this court to "lift the [p]rejudice" against the dismissed issues in his case. Br. of Appellant at 37. We decline to do so.

Erickson appears to argue that his multitude of claims should not have been dismissed with prejudice because they benefit the people of Washington. However, Erickson fails to provide citation to legal authority holding that he can bring an action on behalf of the people of Washington.[18] Finally, Erickson does not cite to any legal authority that would allow this court to

---

[18] At one point, Erickson makes a claim that the attorney general should have been a party to his action and that the superior court "ignored this legislated procedure or intent." Br. of Appellant at 39.

specifically "lift the [p]rejudice" portion of the superior court's order of dismissal. Br. of Appellant at 37. Therefore, we decline to consider this argument. RAP 10.3(a)(6).

C.      AWARD OF ATTORNEY FEES

Erickson argues that the superior court erred in sanctioning him for filing a frivolous claim. We disagree.

1.      Standard of Review

The decision of whether to award attorney fees under RCW 4.84.185 is left to the sound discretion of the trial court and will not be disturbed absent a clear showing of abuse. *Daubner v. Mills*, 61 Wn. App. 678, 684, 811 P.2d 981 (1991). Likewise, we review a superior court's ruling on a request for reasonable attorney fees and costs under CR 11 for an abuse of discretion. *Protect the Peninsula's Future v. The City of Port Angeles*, 175 Wn. App. 201, 218, 304 P.3d 914 (2013), *review denied* 178 Wn.2d 1022 (2013).

A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Daubner*, 61 Wn. App. at 684. For a ruling to be manifestly unreasonable, it must fall " 'outside the range of acceptable choices, given the facts and the applicable legal standard.' " *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

2.      The Superior Court did not Abuse its Discretion

RCW 4.84.185 allows the prevailing party to a frivolous action to seek reasonable expenses, including the cost of attorney fees. A claim is frivolous if it "cannot be supported by any rational argument on the law or facts." *Daubner*, 61 Wn. App. at 684. Further, under CR 11, a plaintiff may be subject to sanctions if: (1) the cause of action is not well grounded in fact, (2)

the relief is not warranted by existing law, (3) the complaint is interpreted for an improper purpose, and (4) the denials of factual contentions are not warranted on the evidence.

Here, the superior court granted the City $1,500 in attorney fees under both RCW 4.84.185 and CR 11. Erickson contends this was in error because the litigation guardian reported his quiet title and boundary line claims to have merit. However, the record shows that Erickson sought to quiet title to property in which the City did not have an interest. Because a claim for quiet title must be brought against someone who claims an interest in the property, Erickson's quiet title claim against the City could not be supported by any rational argument in law or fact. RCW 7.28.010. Thus, his claims were in fact frivolous.

Moreover, even though the litigation guardian's report stated that Erickson's quiet title claims had merit, Erickson was later put on notice that the City did not claim an interest in the properties he sought to quiet title. Specifically, the City emailed Erickson and explained that they did not have an interest in his parcel or in K Street. Despite this notice, Erickson did not dismiss the City from his lawsuit, nor did he withdraw his interrogatories asking the City to provide information unrelated to the property at issue in his lawsuit.

Because Erickson's quiet title complaints against the City could not be supported by any rational argument in law or fact, and Erickson pursued litigation to gather information on property unrelated to the lawsuit after being placed on notice that he had no claim against the City, it was not manifestly unreasonable for the superior court to grant the City's request for fees under RCW 4.84.185 and CR 11. Therefore, we affirm the award of $1,500 attorney fees in favor of the City.

D.    ORDER REQUIRING A MORE DEFINITE STATEMENT

Erickson appears to argue that the superior court erred in requiring Erickson to identify a legal basis for his claims in its order for a more definite statement. We disagree.

1.    Standard of Review

We review the superior court's ruling on a CR 12(e) motion for a more definite statement for abuse of discretion. *Berg. v. Humptulips Boom & River Improvement Co.*, 38 Wash. 342, 344, 80 Pac. 528 (1905). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d at 46-47.

2.    The Trial Court did not Abuse its Discretion

Erickson contends that under the plain language of CR 12(e), he was not required to set forth further legal argument as to the nature of his various claims. According to Erickson, requiring additional citation to support his legal theories "restrict[ed] legal arguments beyond a complaint's intent." Br. of Appellant at 42. We disagree.

A pleading setting forth a claim for relief must contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." CR 8(a). Under CR 12(e):

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, or if more particularity in that pleading will further the efficient economical disposition of the action, the party may move for a more definite statement before interposing a responsive pleading.

Here, Erickson filed a 62-page complaint, alleging seven separate causes of action. Under Erickson's request for declaratory relief, he identified 10 additional legal claims, including a claim

for "Federal Right to Lands, etc." CP at 1073. Even though Erickson identified at least seven separate legal claims, he failed to clearly identify what factual allegations supported each of these distinct causes of action. Thus, Erickson failed to provide "a short and plain statement of the claim" showing that he was entitled to relief. CR 8(a).

Contrary to Erickson's argument, the order requiring him to provide a more definite statement was not a "tool[] of discovery." Br. of Appellant at 42. The superior court merely ordered Erickson to identify the relief he sought and to clearly provide a legal basis for claiming such relief, which is required under CR 8. Given the length of Erickson's complaint, the multitude of legal claims he asserted, and his failure to coherently organize his claims for relief, it was not manifestly unreasonable for the superior court to order a more definite statement.

E.     ACCOMMODATION REQUEST PURSUANT TO GR 33

Erickson argues that he was entitled to court appointed counsel because the City and Port's unconstitutional taking of his property was criminal in nature. According to Erickson, the superior court's failure to appoint counsel violated his due process rights.[19] We disagree.

---

[19] Even though Erickson originally requested court appointed counsel under GR 33, on appeal, he does not appear to argue that he was entitled to counsel based on GR 33. Instead, he argues that his GR 33 request referenced "the procedural protection afforded by the Constitution." Br. of Appellant at 46.

To the extent that Erickson relies on GR 33 to support his argument, he provides no authority holding that a litigant with an ADA-recognized disability is entitled to court appointed counsel in civil matters under GR 33. Instead, GR 33(a)(1)(C) provides representation by counsel to assist an unrepresented party in accessing court service programs and activities. GR 33 does not provide that such counsel will render legal representation for the unrepresented party in the underlying civil matter.

1.      Legal Principles

As a general rule, we do not consider issues raised for the first time on appeal.  RAP 2.5(a).  However, even if not raised at the lower court, a party on appeal may raise claims of "manifest error affecting a constitutional right."  RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 94, 217 P.3d 756 (2009).  The appellant must demonstrate that "(1) the error is manifest and (2) the error is truly of constitutional dimension."  *O'Hara*, 167 Wn.2d at 98.  We review claims of constitutional error de novo.  *State v. Curtis*, 110 Wn. App. 6, 11, 37 P.3d 1274 (2002).

2.      Erickson Fails to Show Manifest Error Affecting a Constitutional Right

Both the Fourteenth Amendment to the United States Constitution as well as article I, section 3 of the Washington State Constitution guarantee persons due process before depriving fundamental liberty interests.  *In re Marriage of King*, 162 Wn.2d 378, 391, 174 P.3d 659 (2007).  Further, the State may not deprive its citizens of a property interest without first affording procedural due process.  *Schlosser v. Bethel Sch. Dist.*, 183 Wn. App. 280, 287, 333 P.3d 475 (2014), *review denied* 182 Wn.2d 1004 (2015).

Here, Erickson appears to argue that the right to counsel is a function of due process when the government unconstitutionally deprives a person of use of his or her property.  His argument relies on his assertion that such action is "criminal" in nature.  Br. of Appellant at 43.  However, Erickson fails to provide citation to any legal authority holding that the government engages in criminal conduct through an unconstitutional taking.  Erickson also fails to provide citation to relevant portions of the record showing that the City or State attempted to take his property for public use.

Instead, Erickson argues that he was denied equality of justice because as a pro se litigant, he was at a disadvantage. However, again, Erickson fails to provide citation to any relevant legal authority holding that an indigent plaintiff should be provided a court appointed attorney in a quiet title action. Even though Erickson references due process, he fails to provide any legal authority holding that due process compels court appointed counsel in a civil property claim. Therefore, he fails to show that this error was truly of constitutional dimension. *O'Hara*, 167 Wn.2d at 98.

Erickson also fails to make any argument that his deprivation of counsel constituted a "manifest" error. Therefore, Erickson's argument on this basis fails. And because Erickson fails to show that his claim is a manifest error affecting a constitutional right, we hold that he may not raise this issue for the first time on appeal.

F.    MOTION FOR RECONSIDERATION

Erickson argues that the superior court erred in denying his motion for reconsideration because the court never provided a reason for denying his motion. Erickson also appears to argue that the superior court failed to provide substantive due process in making its ruling. We hold that each of these claims fail.

1.    Standard of Review

We review the superior court's denial of a motion for reconsideration for abuse of discretion. *Martini v. Post*, 178 Wn. App. 153, 161, 313 P.3d 473 (2013). A court abuses its discretion if its ruling is manifestly unreasonable. *Ryan v. State*, 112 Wn. App. 896, 899, 51 P.3d 175 (2002). A court's ruling is manifestly unreasonable when it is " 'outside the range of acceptable choices, given the facts and applicable legal standard.' " *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d at 47.) A superior court ruling also constitutes abuse of discretion " 'if it

is based on an incorrect standard or the facts do not meet the requirements of the correct standard.' " *Id.* at 899-900 (quoting *In re Marriage of Littlefield*, 133 Wn.2d at 47.). Also, we review claims of constitutional error de novo. *Curtis*, 110 Wn. App. at 11.

> 2. The Superior Court did not Abuse its Discretion

Under CR 59, an aggrieved party may seek reconsideration based on (1) an irregularity in the court proceeding, (2) accident or surprise, and (3) an error in law occurring at trial. CR 59(a)(1), (3), (8). In his motion for reconsideration, Erickson argued that opposing counsel's failure to provide a copy of opposing counsel's comment concerning objections prior to a court proceeding constituted an irregularity under CR 59(1). Erickson also claimed surprise in learning that the Port never claimed an interest in Marine Drive. Finally, Erickson argued that the ruling dismissing his claims against the Port was contrary to law. Specifically, Erickson argued that the Port became a tenant in possession when a final 2004 short plat map, created at the Port's request, erroneously included Erickson's parcel in its identification of Port-owned property.

Erickson failed to provide any citation to legal authority supporting his three bases for relief under CR 59. Therefore, Erickson has failed to show that the superior court's decision to deny his motion was "outside the range of acceptable choices." *In re Marriage of Littlefield*, 133 Wn.2d at 47.

On appeal, Erickson appears to have abandoned his original claims to relief under CR 59, and instead argues that the superior court was required to state a reason for dismissing his motion for reconsideration. However, he does not support his argument with citation to legal authority. Therefore, we decline to address this argument. RAP 10.3(a)(6).

Erickson also raises for the first time on appeal, a claim that the superior court violated due process by denying his motion for reconsideration. He argues that the court procedure deprived him of private land and, therefore, violated his substantive due process rights. However, he again fails to cite to relevant portions of the record or legal authority supporting this argument. He also fails to provide any argument that this constituted a manifest error affecting a constitutional right, which would allow him to raise this issue for the first time on appeal. RAP 2.5(a). Therefore, we do not consider this argument. RAP 10.3(a)(6).

G.     ATTORNEY FEES ON APPEAL

The City requests an award for attorney fees on appeal under RAP 18.9(a) and RCW 4.84.185. The Port and Nippon also request attorney fees on the same basis. We grant respondents' request.

Under RAP 18.9, we may order a party to pay fees if we find that the party has filed a frivolous appeal. An appeal is frivolous if, "considering the action in its entirety, it cannot be supported by any rational argument based in fact or law." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). Stated another way, a frivolous appeal is one in which the issues presented "are so devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114, *review denied*, 100 Wn.2d 1023 (1983).

Considering Erickson's action in its entirety, it cannot be supported by any rational argument based in law or fact. Even though Erickson assigns error to two orders granting summary judgment, he fails to explain how his numerous arguments show a genuine issue of material fact as to any of his claims. Erickson also fails to provide citation to legal authority and relevant

portions of the record to support a number of his legal arguments. *See supra* discussion section A, B.

Therefore, the issues Erickson presents are so devoid of merit that there is no reasonable possibility of reversal. We grant the City, the Port, and Nippon's request for reasonable attorney fees to be determined by a Commissioner of this court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Melnick, J.